STINE v CONTINENTAL CASUALTY COMPANY

Docket No. 68720. Argued May 4, 1983 (Calendar No. 10).—Decided
June 5, 1984.

Robert W. Stine, a licensed architect, brought an action in the
Oakland Circuit Court against Continental Casualty Company,
seeking a declaration that under a policy of professional liabil-
ity insurance Continental was required to defend him in a
malpractice action brought after the expiration of the policy.
The court, John N. O'Brien, J., granted the plaintiff's motion
for summary judgment, declaring itself bound by an unpub-
lished opinion of the Court of Appeals which held that under a
similar policy the insurer was required to defend. The Court of
Appeals, V. J. Brennan, P.J., and Borradaile, J. (N. J. Kaufman,
J., dissenting), affirmed, declining to rely on the unpublished
opinion and instead basing its decision on the notice provisions
of the Insurance Code (Docket No. 53186). The defendant
appeals, alleging that, by its terms, the policy provided no
coverage for claims against the insured made after the expira-
tion of the policy period.

In a unanimous opinion by Justice Ryan, the Supreme Court
*held:*

The professional liability insurance policy in issue insured
the plaintiff against claims that arose and were made during
the period of coverage and not against claims made after the
expiration of the policy for the occurrence of events that would
give rise to liability in the insured during the period of the
policy. The time and manner of notice to the insurer was not at

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 43 Am Jur 2d, Insurance § 726.

44 Am Jur 2d, Insurance §§ 1323, 1329 *et seq.*

Coverage, and exclusions of liability or indemnity policy on physi-
cian, surgeon, dentist, and the like. 35 ALR2d 452.

Effect of failure to give notice, or delay in giving notice or filing of
proofs of loss, upon fidelity bond or insurance. 23 ALR2d 1065.

Liability insurance: claims with respect to notice of accident or
claim, etc., or with respect to forwarding suit papers. 18 ALR2d
443.

[4] 20 Am Jur 2d, Courts § 189.

issue, and thus the notice provisions of the Insurance Code do not apply. Nor is the policy void for ambiguity or invalid as contrary to public policy.

1. Professional errors and omissions liability insurance generally is offered in two forms. "Occurrence" policies, more familiar to the public because automobile policies are of this kind, indemnify against claims arising during the period of the policy no matter when the claim is brought. "Discovery" or "claims made" policies indemnify without regard to when claims arise, provided that the claim is discovered and made during the period of the policy, or, as in this case, they indemnify against negligent acts or omissions occurring during the period of the policy for which the claim is also made during the period of the policy.

2. Mandatory provisions of the Insurance Code, such as the notice provisions, are to be read into contracts of insurance only where applicable. The provisions regarding notice by an insured to the insurer in a liability policy do not apply to the part of the policy that establishes the essential terms of liability. In this case, the policy declared that coverage was provided for claims made against the insured during the life of the policy. The plaintiff was first notified of a claim, and in turn notified Continental, after the policy had expired. Because the requirement that a claim be made against the insured during the period of the policy defines the coverage afforded and does not establish a condition of notice to the insurer to which the notice provisions of the Insurance Code speak, those notice provisions are inapplicable. Were they held to be applicable, "claims made" policies would effectively be abolished because virtually every failure to make a claim during the period of the policy would be excused under the code as a failure to give notice.

3. The Legislature, in enacting the notice provisions of the Insurance Code, did not intend to prohibit "claims made" policies. The validity of such policies was recognized by the Court 43 years ago, and since that decision the Legislature has never moved to contravene its policy judgment. Furthermore, the Legislature is presumed to be aware of the promulgated policies of the agencies and bureaus of the executive department, and the Insurance Bureau specifically approved the issuance of "claims made" policies in 1978.

4. The policy in this case, although more restrictive than a pure "claims made" policy, is not ambiguous on its face. The language of the policy clearly states the coverage provided. The absence of coverage of prior acts or provision for retroactive

application does not give rise to a legitimate claim of ambiguity. Nor is the absence of such coverage contrary to public policy.

Reversed and remanded.

112 Mich App 174; 315 NW2d 887 (1982) reversed.

1. INSURANCE — MALPRACTICE — INDEMNITY.

Professional liability insurance which purports to indemnify an insured only against claims which arise during the period of the policy and which are made against the insured during that period is not subject to the provision of the Insurance Code that failure of the insured to give a notice of claim within the time specified shall not invalidate the claim where it was not reasonably possible to give the notice within the prescribed time so as to extend coverage to claims that arose during the period but were made against the insured after the expiration of the policy; nor is such a policy invalid as contrary to public policy (MCL 500.3008; MSA 24.13008).

2. INSURANCE — MALPRACTICE — INDEMNITY.

The provision of the Insurance Code that coverage may not be denied because notice to the insurer of a claim was not given within the time specified in a policy where it was not reasonably possible to give notice within the time and notice was given as soon as was reasonably possible does not apply to portions of professional malpractice policies which establish essential terms of liability; where indemnity is for claims made against the insured during the life of the policy rather than for events out of which the liability of the insured may arise, application of the notice provision of the Insurance Code to a claim made after the expiration of the policy would result in effectively abolishing such policies because every failure to make a claim during the period of the policy would be excused as a failure to give notice (MCL 500.3008; MSA 24.13008).

3. INSURANCE — MALPRACTICE — INDEMNITY.

A professional liability insurance policy that clearly provided indemnity for claims that arose and were made during the period of the policy, but excluded coverage of claims that arose out of prior acts or claims made after the expiration of the policy, was not ambiguous on its face nor contrary to public policy.

4. COURTS — UNPUBLISHED OPINIONS — PRECEDENT.

Unpublished opinions of the Court of Appeals are of no precedential value; trial courts are not bound by them.

*Googasian, Hopkins & Forhan (by George A. Googasian and Jacquelyn K. Hayes)* for the plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C. (by D. J. Watters and Christine D. Oldani),* for the defendant.

Amici Curiae:

*Bushnell, Gage, Doctoroff & Reizen (by George E. Bushnell, Jr., and John K. Parker)* for General Accident Insurance Company of America; Utica Mutual Insurance Company; Alliance of American Insurers; American Insurance Association; National Association of Independent Insurers.

*LeBoeuf, Lamb, Leiby & MacRae (by Donald J. Greene); Peter K. Demmerle, E. Michael Joye,* and *Donald J. Greene, P.C.,* of counsel, for Underwriters at Lloyd's, London.

*Baxter & Hammond (by William S. Farr and James R. Piggush)* for the State Bar of Michigan.

RYAN, J. The issue for which leave to appeal was granted in this case is the applicability of MCL 500.3008; MSA 24.13008 to the professional liability insurance policy issued to plaintiff by defendant. The Court of Appeals held that the cited statute is applicable to the insurance policy involved in this case and operates to provide coverage which, by the terms of the policy, would not otherwise exist. We hold that it is not applicable and reverse the decision of the Court of Appeals.

In addition, because of the manner in which the foregoing issue has been framed and addressed by the parties, we are required to address the broader question whether the type of insurance policy

involved in this case is void as against public policy. We hold that it is not void for public policy reasons.

I

Plaintiff is a licensed architect whose work ordinarily involves designing residences, restaurants, offices, and furniture. Prior to 1972, he had never obtained professional liability insurance. However, in 1972, he entered into a contract with the Maple Hill Apartment Company to provide architectural services for an apartment project. The Federal Housing Administration supplied the financing for the Maple Hill project, and, pursuant to FHA regulations, required plaintiff to obtain professional liability insurance for his services.

Mr. Stine's insurance agent directed him to Steinhoff, Maas & Whitlaw, an insurance agency which dealt in professional liability insurance contracts for architects. Mr. Stine purchased an errors and omissions policy from Continental Casualty Company (CNA) through the agency. It was effective on February 28, 1972, for one year and was renewed on February 28, 1973. On January 16, 1974, CNA sent plaintiff a cancellation notice, effective January 26, 1974, for nonpayment of installment premiums. Plaintiff had stopped paying premiums when the FHA informed him that the project was completed to its satisfaction. On November 26, 1976, Maple Hill filed a lawsuit against Mr. Stine for errors or omissions or acts of negligence alleged to have occurred sometime between June, 1971, and November 27, 1975. This was the first indication plaintiff had of a claim against him.

Mr. Stine promptly notified CNA that the suit had been filed and requested that CNA defend him. On February 3, 1977, CNA notified Mr. Stine

of its refusal to do so. The reason given was that the claim by Maple Hill was not filed against Mr. Stine during the policy period for which defendant insured plaintiff, as required by the following relevant provisions of the policy:

"(a) Place

"The insurance afforded by this policy applies only to errors, omissions or negligent acts which occur within the United States of America, its territories or possessions or Canada, except as otherwise provided by endorsement.

"(b) Time

"The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) *provided that claim therefor is first made against the insured during this policy period* and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period." (Emphasis added.)

On October 30, 1978, plaintiff filed this action against CNA, praying for a declaration of rights under the insurance policy. He sought an adjudication that CNA was required to defend him in the action by Maple Hill and claimed damages for the insurer's refusal to do so. The plaintiff specifically averred that despite the fact that he had not given CNA "notice of the claim made by Maple Hill Apartment Co. within 60 days after the expiration of said policy", as required by the policy provision quoted, but not emphasized, he was nevertheless entitled to coverage and defense because the provisions of § 3008 of the Insurance Code excused the failure to give notice when it is not reasonably

possible to do so, and in this case it was not.[1] In its answer, CNA declared that it was not denying coverage because of the manner or timeliness of Mr. Stine's notice to it of the claim against him, but because, by its terms, the policy provided no coverage for claims made against the insured after the expiration of the policy period.

Both parties filed motions for summary judgment. The trial court, declaring itself bound by *Honner v Continental Casualty Co,* an unpublished opinion of the Court of Appeals, decided June 22, 1978 (Docket No. 77-3553),[2] granted the plaintiff's motion on the ground that the defendant had not, under GCR 1963, 117.2(2), stated a valid defense to the plaintiff's claim. The defendant's motion for summary judgment was therefore denied.

On appeal, a divided Court of Appeals panel affirmed, stating, however, that it "was not necessarily relying upon" the unpublished *Honner* deci-

---

[1] Section 3008 reads as follows:

"In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and also a provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible".

[2] In its written opinion, the trial court declared:

"This court, however, is constrained to recognize and apply the law of this state as announced by its higher courts. The holding of the Court [of Appeals] in *Honner* is clearly on fours with the issue presented herein, and this court must enter judgment accordingly."

Although this Court has not spoken to the matter either in decision or in the general court rules, we take it as well settled that an unpublished opinion of the Court of Appeals is of no precedential value, and the Court of Appeals has explicitly said so. See *Moultrie v DAIIE,* 123 Mich App 403, 407-408; 333 NW2d 298 (1983); *Babayan v DAIIE,* 121 Mich App 515, 517; 328 NW2d 429 (1982). Also see *Borgess Hospital v Berrien County,* 114 Mich App 385, 386, fn 1; 319 NW2d 354 (1982), and *Home Ins Co v Rosquin,* 90 Mich App 682, 684, fn 2; 282 NW2d 446 (1979), lv den 408 Mich 855 (1980). Trial courts are not bound by decisions having no precedential value.

sion. Specifically, the Court of Appeals held that the insurance policy in question would be construed as providing coverage for the malpractice claim against the plaintiff architect because of the applicability of § 3008.

We granted the defendant's application for leave to appeal. 414 Mich 876 (1982).

## II

The primary issue, restated, is whether § 3008, a provision of the Insurance Code of 1956, applies to the insurance policy in this case which, by its terms, limits its coverage to indemnification of Mr. Stine for losses suffered as a result of errors, omissions, or negligent acts occurring on or after the effective date of the policy, "provided that [a] claim [under the policy] is first made against the insured during the policy period and is reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period".

We hold that on the facts of this case, § 3008 is not applicable to the insurance policy in question, and that the Court of Appeals erred in affirming the trial court's summary judgment in plaintiff's favor.

## A

Historically, there have been two general types of errors and omissions insurance policies made available to the professional person. They are the "discovery" or "claims made" type of policy, and the so-called "occurrence" policy. The parties are in general agreement that "claims made" or "discovery" policies are ordinarily written to provide professional liability coverage for architects, engi-

neers, accountants, attorneys, physicians and other professionals. Indeed, the parties agree that "claims made" coverage of the kind involved in this case was, and is, the only coverage written in Michigan to indemnify architects against professional liability claims.

As a general proposition, although not in every case and indeed not in this case, a "discovery" or "claims made" policy is one in which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is *made* against the insurer during the policy period. Some "claims made" policies, and this case involves one of them, are written to provide coverage only for negligent acts or omissions which occur during the policy period and for which the claim is made against the insurer during that period.

An "occurrence" insurance policy, on the other hand, generally is one in which indemnity is provided no matter when the claim is brought for the misdeed complained of, providing it occurred during the policy period.

One writer described the difference between "claims made" and "occurrence" policies as follows:

"The major distinction between the 'occurrence' policy and the 'claims made' policy constitutes the difference between the peril insured. In the 'occurrence' policy, the peril insured is the 'occurrence' itself. Once the 'occurrence' takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the 'claims made' policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place". Kroll, The Profes-

sional Liability Policy "Claims Made", 13 Forum 842, 843 (1978).

Or, as the United States Supreme Court put it:

"An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a 'claims made' policy protects the holder only against claims made during the life of the policy". *St Paul Fire & Marine Ins Co v Barry,* 438 US 531, 535, fn 3; 98 S Ct 2923, fn 3; 57 L Ed 2d 932 (1978).

There is greater public familiarity with the "occurrence" type of policy than with the "claims made" type, largely because automobile insurance liability policies are "occurrence" policies, although other perils are covered in such policies as well. Coverage in an "occurrence" policy is provided no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations of actions provisions, providing the act complained of occurred during the policy period. Because the insurer's liability in such policies ordinarily relates to a definite, easily identifiable and notorious event such as an automobile accident, a fire, a slip and fall injury, or a ship collision, the insurer is ordinarily able to conduct a prompt investigation of the incident and make an early assessment of related injuries and damages with the result that actuarial considerations permit relative certainty in estimating loss ratios, establishing reserves, and fixing premium rates.

"Claims made", or "discovery" policies, on the other hand, are of relatively recent origin and were developed primarily to deal with situations in which the error, omission, or negligent act is difficult to pinpoint and may have occurred over

an extended period of time.[3] In the case of a "claims made" policy written to cover professional liability, the error or omission may be a discrete act or failure to act, or it may consist of a lengthy process and remain latent and undiscoverable for a number of years. Examples include a physician's misdiagnosis, an attorney's fraudulent concealment, or an architect's defective design. From an underwriting perspective, occurrence policies are unrealistic for such risks because of the long or open "tail" exposure which results. When the "event" intended to be covered cannot easily be fixed and the liability for the consequent injury extends long into the future, often well after expiration of the policy, considerations of inflation, upward spiraling jury awards, and legislative and judicial adoption of newly developing concepts of tort law mean that actuarial factors, including fixing premium rates and establishing adequate reserves, are highly speculative. The result, logically, is the establishment of a premium rate schedule sufficiently high to accommodate "worst scenario" jury verdicts returned years after the error, omission, or negligent act.

"Claims made" policies meet such difficulties by enabling the insurer to underwrite the risk, compute the premiums, and establish reserves with greater accuracy, safe in the assumption that liability will be limited to claims actually made during the term of the policy for which the premium is computed. When the policy term expires, the insurer knows exactly what its exposure is, at least in terms of the nature and number of

---

[3] We are advised by the parties that in the relatively new area of asbestos and other environmental contamination litigation, for example, because of the near impossibility of identifying the time of the tortious "occurrence", and the effect of long-term exposure upon the character of the injury, "claims made" insurance coverage is the type ordinarily written.

"claims made". As a result, the insurer is better able to predict the limits of its exposure and more accurately estimate the premium rate schedule necessary to accommodate the risk undertaken.

There are corresponding, if not always comparable, benefits to the insured in purchasing a claims made policy. Since the insurer can limit the duration of its exposure to the term of the policy currently in force, the more precise actuarial data available enable it to charge a lower premium than would be necessary for an occurrence policy. Another advantage to the insured is the ability, if desired, to purchase insurance which will cover acts or omissions during a period prior to the inception of the policy, providing only that any claim is made during the policy period and any extensions thereof. Claims made policies are also useful to the professional person to provide excess coverage in addition to "occurrence" policy coverage purchased much earlier, the maximum limits of which are now unrealistically low for the reasons stated, and therefore may now be inadequate.

## B

In the case before us, the trial court seemed to be concerned with the need to determine categorically whether the policy in question was either a "claims made" or "discovery" policy, or an "occurrence" policy in order to determine whether § 3008 was applicable.[4] Referring to the policy language, and paraphrasing its provisions, the trial court said:

"First, the act or omission must occur during the period of the policy. This restriction is consistent with the coverage afforded by an occurrence policy. Second,

_____

[4] That was the approach taken by the *Honner* Court which the trial court here felt bound to follow.

the claim that arises from the insured's act or omission must be made known to him during the period of the policy. This restriction is consistent with the coverage afforded by a discovery policy. Last, the insured must notify the insurer of the claim during the period of the policy, or within 60 days after the expiration of the policy period. This provision is consistent with the coverage afforded by a discovery policy".

\* \* \*

"In *Honner [supra]*, the Court [of Appeals] concluded that the policy of insurance issued to the plaintiff was an occurrence policy".[5]

Having correctly observed that the *Honner* Court found a virtually identical insurance policy to be an "occurrence" policy and thus, in its judgment, subject to § 3008, and believing itself bound by the *Honner* Court decision, the trial court appears to have concluded that the policy here in question is an "occurrence" policy and therefore subject to the provisions of § 3008 excusing the failure to promptly notify the insurer of the pendency of the claim when timely notice is not reasonably possible.

The Court of Appeals panel in this case did not find it necessary to classify the insurance policy as a "claims made" or an "occurrence" policy, but simply found § 3008 to be applicable because it was not "reasonably possible" for Mr. Stine to notify CNA of the claim against him within the time required by the policy. Implicit in the decision of the Court of Appeals is the conclusion that § 3008 is applicable whether the policy in question is a "claims made" or an "occurrence" policy. It declared:

"Insurance contracts are subject to statutory regula-

[5] Opinion of the trial court.

tions, and the mandatory provisions of the Insurance Code must be read into the contract." *Stine v Continental Casualty Co,* 112 Mich App 174, 179; 315 NW2d 887 (1982).

In so holding, the Court distinguished *Lehr v Professional Underwriters,* 296 Mich 693; 296 NW 843 (1941).

In *Lehr,* two suits were brought against a licensed chiropractor for malpractice. His professional liability insurer, Professional Underwriters, refused to defend or indemnify Dr. Lehr because the claims against the insured had not been made during the policy period or within two months thereafter as provided in the policy. The policy, in relevant part, provided:

" 'Therefore, said indemnitor does hereby agree with indemnitee named herein, subject to the limitations herein contained, to defend with its (indemnitor's) attorneys, said indemnitee, in all civil suits brought against him by any party plaintiff, who alleges in the pleadings filed in said suit to have sustained damages in person under Articles I and II of this policy, but not otherwise, from a cause of action arising and accruing within the time included in this policy and presented or prosecuted within two months after the expiration hereof, and to promptly reimburse him for any and all final judgments paid by him, and not exceeding in amount the sum above limited.' " *Lehr, supra,* p 695.

After judgment against him in the two malpractice actions, Lehr brought suit on the policy against Professional Underwriters seeking damages.

This Court held that there was no coverage under the policy because the malpractice claims had not been "presented or prosecuted" within the period required by the terms of the policy. The

distinction between *Lehr* and this case, according to the Court of Appeals, is that the

"language [of § 3008] was in 1929 CL 12460 * * * and therefore was in effect at the time of the *Lehr* decision but [it] was apparently not considered by the *Lehr* Court even though we think it is both applicable and controlling in the instant case, since insurance contracts are subject to statutory regulations". *Stine, supra,* p 179.

As explained more fully below, it appears that the trial court and the Court of Appeals may have misunderstood the applicability of § 3008 by focusing too narrowly on the perceived importance of characterizing the insurance policy as a "claims made" or an "occurrence" policy to the neglect of a careful analysis of the terms of the insurance contract in order to determine the conditions of coverage and the reasons for defendant's denial of liability. Although the labels "discovery" or "claims made" and "occurrence" are useful in describing the two broad general categories of casualty insurance forms, they are not expressions employed as contractual terms of art in casualty insurance contracts. The legal effect of an insurance agreement in a given instance depends, as always, upon the language of the contract and the intent of the parties. It does not take its meaning from the shorthand label euphemistically employed in the insurance industry and in the judiciary to identify categorically the policy type.

Ironically, the Court of Appeals majority appears to have erred by disregarding entirely the distinction between the two types of policies and focusing too narrowly upon perceived universal applicability of the rule that "insurance contracts are subject to statutory regulations" without ex-

amining with sufficient care the operative contractual language of the policy in question.

## C

In determining whether § 3008 applies to the policy in this case, we undertake a two-step analysis. First, we must delineate the scope of § 3008 and identify the kinds of cases to which it applies and those to which it does not apply. Second, we must review the policy involved in this case and determine whether, on the facts of this case, it is the kind of policy to which § 3008 applies.

## 1

To repeat, § 3008 reads:

"In such liability insurance policies there shall be a provision that *notice given by* or on behalf of *the insured to* any authorized agent of *the insurer* within this state, with particulars sufficient to identify the insured shall be deemed to be *notice to the insurer;* and also a provision that failure to give any *notice* required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such *notice* within the prescribed time and that *notice* was given as soon as was reasonably possible". (Emphasis added.)

Undoubtedly, the Court of Appeals was correct in the general observation that insurance contracts are subject to legislative enactments and that mandatory provisions of the Insurance Code must be read into the contract. *Stine v Continental Casualty Co,* 112 Mich App 174, 179; 315 NW2d 887 (1982), citing *Wendel v Swanberg,* 384 Mich 468; 185 NW2d 348 (1971), and *Galkin v Lincoln Mutual Casualty Co,* 279 Mich 327; 272 NW 694

(1937). However, they are to be read into the insurance contract only when applicable.

The Court of Appeals apparently believed that the provision of the policy in question which specified that a claim must be made on the *insured* during the policy period was a notice provision under § 3008. We disagree.

By its terms, § 3008 deals with a liability insurance policy's *notice* provision—notice by the *insured to the insurer* of the occurrence of an event causing liability—and does not apply to the insuring agreement portion of the policy which establishes the essential terms for liability and declares that what is covered is a claim which is made against the *insured* during the life of the policy. The *notice* to which § 3008 speaks, as applied to a "claims made" policy, is the notice by the insured to the insurer that a claim against the insured has been made during the period of coverage, which is during the policy period.

In essence, in a "claims made" policy, the event causing liability is a third party making a claim upon an insured. True, the insured is indemnified for loss from errors, omissions, or negligent acts he may have committed earlier, but the provision of the insuring agreement which is critical to establishing liability in such policies is the time at which the injured third person's claim is made against the insured. The timing of the making of the claim in such policies stands in equal importance with the error or omission as the insured event. On the other hand, the event causing liability in an "occurrence" policy is the damage-causing occurrence itself such as an automobile accident, a slip and fall, or a fire. That event is the insured event, and the timing of the filing of a claim by an injured party against the *insured* is

not a term of the insuring agreement in an occurrence-type policy which establishes the insurer's liability. "Notice" provisions still exist for both kinds of policies, however.

In the "claims made" situation, notice to the *insurer* by the insured that a claim *timely made* against him is often required to be given during the policy period or within a specified amount of time after the period. In that connection, the insurance policy in this case provides:

"The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor is first made against the insured during this policy period *and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period"*. (Emphasis added.)

"Occurrence" policies also require that notice of the fact of the covered event be given. In such policies, the notice to the insurer is ordinarily required to be given within a specified time after the insured event; the auto accident, the slip and fall, or other injury-causing incident, not within a specified time after the claim is made against the insured.

Since notice provisions exist for both types of policies, and since in a "claims made" policy the requirement that a claim against the insured be made during the policy period essentially defines the coverage available rather than establishing a notice requirement, as a general proposition, § 3008 will affect a "claims made" policy only with respect to its *notice* provision. Section 3008 would be applicable in a "claims made" type of policy, for

example, in the situation in which a claim was made against the insured during the policy period, but notice could not reasonably have been given to the insurer within the specified number of days after the policy expired. In the case before us, that situation did not occur.

2

In this case, the plaintiff insured was first notified of the existence of a claim against him on November 26, 1976. He promptly notified the defendant of the claim and the defendant concedes that he did so. The policy, however, expired on January 26, 1974.

The defendant makes no complaint that it was not timely notified by the plaintiff of the claim against him. It does not claim that the notice requirement, one of the conditions of coverage in the policy, was not met. It asserts, rather, that there is no coverage under the terms of this policy because no claim of the alleged professional error or omission or negligent act was brought against the insured, Mr. Stine, during the life of the policy, rendering immaterial the timeliness of notice to CNA by Mr. Stine of the filing of the lawsuit against him. The contract provides coverage for a claim made against the plaintiff during the policy period. Here the claim was made against the insured almost three years after the policy was cancelled. Since the requirement that the claim be made against the insured during the policy period defines the coverage afforded and does not establish a notice to the insurer condition to which § 3008 speaks, we find § 3008 to be inapplicable.

By ignoring the distinction between a policy in which an otherwise valid claim for a covered event

or loss is defeated for failure of the insured to notify the insurer and a policy in which a claim or loss which is not covered because it is not "made" during the life of the policy, the trial court and Court of Appeals misapplied § 3008. Manifestly, if § 3008 is made applicable to "claims made" policies, such policies are effectively abolished, since virtually every failure to make a claim during the policy term would be excused in the name of § 3008 as a "failure to give notice".

### D

Plaintiff asserts, and the Court of Appeals implicitly concluded, that the Legislature, by its adoption of § 3008, intended to prohibit "claims made" policies. We have already explained why we think that is a misunderstanding of the meaning of § 3008. But there is still another reason for concluding that the Legislature had no such intention.

As early as 1941 this Court recognized the validity of a "claims made" professional liability policy in *Lehr, supra*. In that case, in response to the plaintiff's claim that the "claims made" policy language quoted was "ambiguous, repugnant, invalid and impossible of performance, and * * * is not legal, but is against good public policy", the Court stated:

"An insurance company may limit the risks it assumes and fix its premium accordingly.

\* \* \*

"The present provision limiting liability is not against public policy. It is not against public policy for a casualty company, in unambiguous terms, to limit its liability only to claims or suits brought within a time certain, and thus enable the company to make an early

investigation, secure proofs, and possibly prevent fraud or collusion.

\*   \*   \*

"To hold otherwise would be to write a new contract for the parties. This we have no right to do".

As we have stated, the Court of Appeals distinguished *Lehr* on the ground that although essentially the same statutory language as is now found in § 3008 was in effect at the time of the *Lehr* decision as 1929 CL 12460, it "was apparently not considered by the *Lehr* Court". The Court of Appeals suggests no reason for the oversight it attributes to the *Lehr* Court, and we can think of none. It is more likely, we think, that the Court in *Lehr* recognized that the predecessor to § 3008 was applicable to the notice provision of the insurance policy, if any, and not to the "claims made" liability provision of the policy involved in that case. In any event, it is clear that the Legislature, in the 43 years since the release of *Lehr,* has never acted to contravene the policy judgment of that decision that "claims made" policies are indeed valid and enforceable. It is not as though the matter has not been brought to the Legislature's attention. Not only is it presumed that lawmakers are aware of the decisions of this Court, it is likewise presumed that they are aware of the promulgated policies of the agencies and the bureaus of the executive department. In that connection, it is significant that in 1978 the Insurance Bureau of the Michigan Department of Commerce specifically approved the issuance, in Michigan, of "claims made" insurance policies. In a memorandum accompanying Insurance Bureau Bulletin No. 78-17, issued November 27, 1978, the Commissioner of Insurance, Thomas C. Jones, while cautioning that "claims made" policies present "serious concerns"

for a number of reasons, declared that such policies have "their legitimate and useful role in certain circumstances and the value of diversity and flexibility in substantive policy provisions is well recognized and understood". Cautioning that such policies should have restrictive use, the commissioner issued detailed guidelines for the issuance of such policies and observed that:

"[T]here are certain specialized types of liability insurance for which the use of claims-made rather than occurrence policies may offer definite advantages. Chief among these advantages are the possibilities, at least in theory, for more accurate initial pricing and for more ready and reliable price adjustments upon renewal. The risks for which the use of claims-made policies may be appropriate are those exhibiting the so-called 'long tail,' that is, a relatively long period of time between the commission by the insured of an act, error, or omission from which legal liability arises and the filing of a claim against the insured or the insurer seeking monetary compensation for damages suffered as a result. These types of risks include but are not necessarily limited to:

"1. Professional liability or malpractice insurance for * * * architects * * *".[6]

In view of the Legislature's silence in the wake of *Lehr,* and the widely publicized Bureau of Insurance bulletin approving "claims made" policies, we are unpersuaded by the plaintiff's argument that the Legislature intended that such policies be outlawed.

### III

By the combination of his pleading on appeal to

---

[6] *In the Matter of Guidelines Relating to Claims-Made Liability Insurance Policies,* Department of Commerce Insurance Bulletin No. 78-17, issued November 27, 1978.

the Supreme Court, the briefs in support thereof, and oral argument, the plaintiff further contends that the insurance policy issued to him is an "ambiguous contract of adhesion"; that it failed to fulfill his "reasonable expectations" as to coverage; that it failed to warn him of its "limited value"; and that it is void as contrary to public policy.

In addressing these contentions, we recall that this case is before us for review of a summary judgment on the pleading under GCR 1963, 117.2(2) for failure to state a valid defense. We are limited, therefore, to questions of law and are without authority to weigh factual claims. *Durant v Stahlin,* 375 Mich 628; 135 NW2d 392 (1965). Neither the plaintiff's complaint nor the defendant's answer frame any factual issues concerning the "circumstance of the transaction" in which plaintiff now argues he was coerced to contract for the insurance policy in question; what his expectations were when he purchased the policy; or whether he was "warned" as to the "limited value of the policy". These are factual matters neither pleaded nor proved below and thus beyond the ambit of our consideration of the propriety of the trial court's entry of a judgment on the pleading in plaintiff's favor.

It is appropriate, however, that we address the plaintiff's contention that the insurance policy issued to him is void for ambiguity and invalid as contrary to public policy.

## A

The heart of the plaintiff's claim that the insurance policy is void for ambiguity is the contention that because it is required that the error, omission, or negligent act occur during the policy period, a feature found in most "occurrence" type policies,

and also requires that the claim be made during the policy period, an essential feature of "claims made" policies, the policy is neither a pure "claims made" policy nor a pure "occurrence" policy and is therefore a "hybrid", void for its ambiguity.

Ordinarily, of course, facial or patent ambiguity in a contract does not render it void. If the language of a contract is ambiguous, the court's duty is to look beyond the bare language of the agreement to determine its meaning.[7] If the ambiguity is latent, extrinsic evidence is admissible to clarify the meaning of the contract. Ambiguity in a contract focuses and intensifies the court's duty to ascertain the intent of the parties in order that the agreement be carried out; it does not invalidate it.[8] That rule is the same for insurance contracts as for any other written contract. See *Bowen v Prudential Ins Co of America,* 178 Mich 63; 144 NW 543 (1913). But in no case is ambiguity, patent or latent, to result in a declaration that the contract is void. The plaintiff does not invite our attention to any authority for the proposition that any contract, insurance or otherwise, or any instrument for that matter, is void for ambiguity—and our research discloses none.

In all events, the quoted language of the insurance policy in this case is not ambiguous on its face, and certainly not for the reason suggested by the plaintiff.

[7] While the Court observed the distinction between latent and patent ambiguities in its decision in *Zilwaukee Twp v Saginaw-Bay City R Co,* 213 Mich 61; 181 NW 37 (1921), the distinction is fast fading and is now observed by few courts. Its origin is traced to a "wholly unphilosophical and * * * scholastic quibble of Lord Bacon", *Armistead v Armistead,* 32 Ga 597 (1861). Common sense suggests that extrinsic evidence, including parol evidence, should be admissible to clarify the meaning of any ambiguous contract whether the ambiguity is latent or patent. The matter is not decisive of the case before us, however.

[8] The ancient maxim is: *ut res magis valeat quam pereat* (that it may rather become operative than null).

The Court has held that a patent ambiguity in a contract

"is one apparent upon the face of the instrument, arising by reason of inconsistency, obscurity or an inherent uncertainty of the language adopted, such that the effect of the words in the connection used is either to convey no definite meaning or a double one". *Zilwaukee, supra,* 213 Mich 69.

No such inconsistency, obscurity, uncertainty, indefiniteness, or double meaning can reasonably be found in the operative language of the insurance policy issued to the plaintiff. It declares in simple, plain, direct, and easily understood terms of familiar meaning that:

"The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor is first made against the insured during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period".

It is true that in the pure "claims made" insurance policy, although the claim must be made during the policy period, the error or omission or act of negligence which is covered under the policy can have occurred either during the policy period or at any time prior thereto. That feature of such policies is sometimes referred to as the "prior acts" or "retroactive" provision. The insurance policy involved in this case, however, is more restrictive than the traditional "claims made" policy in that the covered error or omission or act of negligence must have occurred during the policy

period. Simply because the policy cannot be simplistically categorized as a pure "claims made" policy or a pure "occurrence" policy does not render its meaning vague, obscure, uncertain, or indefinite. The policy language clearly states that coverage is provided for an error or omission occurring during the life of the policy, providing the claim is also brought against the insured during the policy period. Simply because the insurance contract is a "hybrid" does not mean that its meaning is unclear or ambiguous.

The plaintiff also contends that the policy language is ambiguous because the requirement that the error, omission, or negligent act occur during the policy period "effectively deprived Stine of the primary benefit of this type of policy". It is not apparent to us, and the plaintiff does not suggest, how the absence of "prior acts" or "retroactive" coverage, as it is called, gives rise to any legitimate claim of ambiguity. For the reasons stated, we think it does not.

There being no ambiguity in the language of the insuring agreement, we are obligated to accept as the agreement of the parties the plain meaning of the words used.

## B

Finally, it is the plaintiff's contention that "claims made" insurance policies, whether covering errors or omissions occurring at any time during or prior to the policy period or, as in this case, restricted to errors and omissions occurring during the policy period, are contrary to public policy. We disagree.

It is urged that the absence of "prior acts" or "retroactive" coverage and the absence of post-policy peril or "long tail" coverage is a violation of

public policy because the insurance policy "denied [plaintiff] the primary benefit of a 'claims made' policy", was contrary to his "reasonable expectation" as to coverage, and thus rendered the insurance policy "worthless".

As we observed earlier, we are without a factual record establishing what the plaintiff's reasonable expectations were. That matter is for resolution by a factfinder.

The defendant sold and the plaintiff purchased a "claims made" policy. By definition, as well as by its plain terms, such a policy does not provide coverage for claims brought after the expiration of the policy period. If such coverage is desired, one must purchase, if available, an "occurrence" type policy or continue to renew a "claims made" policy. Mr. Stine does not suggest to us how the issuance of such an insurance policy violates public policy or indeed even what public policy is implicated.

Although it is not entirely clear, it appears that plaintiff points particularly to the provision of the policy which requires that the error or omission or negligent act have occurred during the policy period as being a violation of public policy. It is because of that provision particularly that the policy in this case is said to have "effectively deprived Stine of the primary benefit of this type of policy".

Our attention has not been invited to any authority in this state or elsewhere for the proposition that the validity of a "claims made" policy depends upon unlimited retroactivity of the date of the alleged error or omission. There is, in fact, authority to the contrary. In *Gereboff v Home Indemnity Co,* 119 RI 814; 383 A2d 1024 (1978), the Rhode Island Supreme Court, citing this

Court's decision in *Lehr,* approved a professional liability "claims made" insurance policy which required that the error or omission of an accountant must have occurred during the policy period. The Rhode Island Court stated:

"Here, the plaintiffs knowingly purchased a policy that excludes coverage for prior acts. That exclusion does not seem unreasonable, and we are unaware of any principle that either prevents an insurer from imposing reasonable conditions upon the obligations it assumes in its contract [citing *Lehr],* or condemns on public policy grounds coverage that combines elements of both 'discovery' and 'occurrence' policies, but provides less protection than is customarily afforded by either". 119 RI —; 383 A2d 1028.[9]

## IV

We agree with the reasoning of the Rhode Island Supreme Court and conclude that the policy provisions limiting coverage to acts or omissions occurring during the policy period are not invalid as against public policy.

In addition, we hold that § 3008 is not applicable to the insurance policy in this case since CNA's

[9] We are aware of the decision of the chancery division of the New Jersey Superior Court in *Jones v Continental Casualty Co,* 123 NJ Super 353; 303 A2d 91 (1973), holding invalid a "claims made" policy which excluded coverage for acts or omissions occurring prior to the inception date of the policy. *Jones,* however, appears to stand alone as a sole authority for its reasoning and result. A careful examination of the insurance policy terms in that case discloses a number of additional restrictions on the coverage, including the requirement that the insured must have been covered under prior policies written only by Continental Casualty Company, the defendant in that case. Subsequent New Jersey decisions have explicitly narrowed the holding of *Jones* to invalidating only those "claims made" policies which condition coverage upon the requirement that the professional have prior policies with the same insurance company. *Middle Dep't Inspection Agency v Home Ins Co,* 154 NJ Super 49, 54; 380 A2d 1165 (1977).

defense is not based upon the policy's notice provision.

The judgment for plaintiff is set aside, and the cause is remanded to the Sixth Judicial Circuit Court.

WILLIAMS, C.J., and KAVANAGH, LEVIN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with RYAN, J.