MARATHON FLINT OIL COMPANY, Plaintiff,

v.

AMERICAN STATES INSURANCE COMPANY, a foreign insurance company authorized to do business in Michigan, Defendant.

Civ. A. No. 92–CV–40159.

United States District Court, E.D. Michigan, S.D., at Flint.

Oct. 27, 1992.

Robert P. Keil, Flint, MI, for plaintiff.

John R. Monnich, Holahan, Malloy, Maybaugh & Monnich, Troy, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Pending before the Court are two motions: Plaintiffs' motion to compel discovery and Defendant's motion for summary judgment.

## FACTS

Plaintiff, a local franchisee of the national oil company, has filed a declaratory judgment action seeking the Court to name Defendant as the insurer of the liability asserted against Plaintiff in a pending suit in Genesee County Circuit Court and related matters with the State Department of Natural Resources (DNR). Plaintiff leased land from Richfield Iron Works ("Iron Works") from 1956 until 1973 for use as a gasoline station. The DNR has found contaminated ground water in the area near the Iron Works since 1989 and has named both the Iron Works and Marathon Flint ("Marathon") as responsible parties. The Iron Works commenced suit against Marathon in Genesee County Circuit Court, January 31, 1992 under the gas station's lease seeking complete indemnification.

Consulting engineers have found five underground tanks: two that predate Marathon, which have not yet been removed, and three from Marathon, all of which developed leaks through corrosion. Marathon may be liable for negligence in having failed to remove the two tanks that predated its lease. Marathon claims that it was insured by Western Cas. & Surety Co. ("Western"), from 1956 until March, 1979. No copies of the insurance are available

852

other than from March, 1977–March 1979. Marathon has assorted records referring to policy coverage with Western, and its president has submitted an affidavit naming Western as the insurer, but the company destroyed the policies for storage. The insurance agency is out of business. Western was bought by Defendant who now owns the policies. Defendant destroyed old policies of Western.

Plaintiff's suit seeks:

Count I  A declaratory judgment that Defendant must defend and provide coverage for the underlying claim.

Count II  That to the extent that Western used provisions of the standard Comprehensive General Liability (CGL) provisions, Defendant is estopped from denying coverage due to statements by the Insurance Industry representatives accepting coverage.

Count III  That liability of Marathon to Iron Works is predicated on the terms of the lease, which constitutes an "incidental contract" for which coverage is provided under the CGL policies.

## ANALYSIS

Defendant makes several arguments for summary judgment, each of which are addressed in turn.

I.  Manifestation Theory of Insurance Coverage.

Defendant contends that Michigan has adopted the manifestation theory of insurance coverage. *Transamerica Ins. Co. v. Safeco Ins. Co.*, 189 Mich.App. 55, 472 N.W.2d 5 (1991). That is, an insurer is only liable if a covered occurrence manifests itself while a policy is in effect. Since the manifestation occurred in 1989, after Defendant's coverage ceased, there is no coverage.

Plaintiff denies that Michigan has adopted the manifestation theory in all insurance claims and contends *Transamerica* is limited to the particular chemical at issue in that case, ureaformaldehyde. Plaintiff cites other Michigan and federal cases suggesting Michigan has not adopted the manifestation test.

The *Transamerica* case states that the manifestation theory is "not inconsistent with Michigan law." *Transamerica,* 189 Mich.App. at 59, 472 N.W.2d 5. The court treats the issue as one of contract interpretation, performing an analysis of the policy's definition of the word "occurrence" which is "an event including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

There is not a Michigan Supreme Court opinion on point, so there is no definitive Michigan law on the subject.

The Court's own research yielded a Michigan Supreme Court case, *Stine v. Continental Cas. Co.,* 419 Mich. 89, 349 N.W.2d 127 (1984) that discusses the distinction between "occurrence policies" and "claims made" policies in the context of a duty to defend/provide coverage in a professional malpractice insurance case in a way that lends support to Plaintiff's position:

Coverage in an "occurrence" policy is provided no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations to action provisions, providing the act complained of occurred during the policy period. Because the insurer's liability in such policies ordinarily relates to a definite, easily identifiable and notorious event such as an automobile accident, ... the insurer is ordinarily able to conduct a prompt investigation of the incident ... with the result that actuarial considerations permit relative certainty....

"Claims made" or "discovery" policies, on the other hand, are of relatively recent origin and were developed primarily to deal with situations in which the error, omission, or negligent act is difficult to pinpoint and may have occurred over an extended period of time.  [Footnote 3]

3 We are advised by the parties that in the relatively new area of asbestos and other environmental contamination litigation, for example, because of the near impossibility of identifying the time of the tortious "occurrence", and the effect of long-term exposure upon the char-

acter of the injury, "claims made" insurance coverage is the type ordinarily written.

*Stine*, 419 Mich. at 98–99 & note 3, 349 N.W.2d 127.

The fact that both parties in the present case are discussing the missing policies as occurrence policies, suggests that the *Stine* court's analysis would apply. Unfortunately for the insurance industry, it did not foresee at the time that it wrote occurrence CGL policies that environmental exposure would be better suited to a claims made policy. That unforeseeability on the industry's part does not provide grounds to exclude coverage on a manifestation theory, however.

At least three cases from other states apply the reasoning in *Stine* to environmental cases. *Harford County v. Harford Mutual Ins. Co.*, 327 Md. 418, 610 A.2d 286, 294–95 (Md.Ct.App.1992) addresses chemical leakage from a landfill. The court there found that adoption of the manifestation theory would be akin to giving the insurance company the advantage of a claims-made policy. Therefore, it found a duty to defend.

*Montrose Chemical Corp. v. Admiral Ins. Co.*, 9 Cal.App. 4th 1021, 1038, 5 Cal. Rptr.2d 358 (1992), review granted May 21, 1992, another environmental dumping case, also found a duty to defend placed upon all insurers during the dumping period. California law adopts the manifestation test, however, for first-party claims against insurers.

*American Employers Ins. Co. v. Pinkard Constr. Co.*, 806 P.2d 954 (Colo.App. 1990), cert. dismissed, 831 P.2d 887 (Colo. App.1991), held an insurer who provided coverage during a period that a roof was corroding had a duty to defend. The court stated, "By the time the damage was obvious, it was widespread. It is undisputed that corrosion occurred during each policy period." 806 P.2d at 956.

In the instant case, the parties are not certain when the leakage occurred. This would suggest that further factual discovery is necessary prior to a ruling on the manifestation issue, unless this court finds that *Transamerica* is the rule that the Michigan Supreme Court would adopt.

The Court is convinced, however, that the Michigan Supreme Court will reject the manifestation theory because it provides the same protection for the insurance company as a claims made policy without the reduction in premiums for the insured.

In any event, following the filing of briefs in this case, the Sixth Circuit has ruled in another case arising from the Eastern District of Michigan that the manifestation theory of *Transamerica* does not apply to environmental cases. *Ray Industries v. Liberty Mutual Ins. Co.*, 974 F.2d 754, 765–766 (relevant excerpt not reported in U.S.L.W.) (6th Cir.1992).[1] Therefore, the Court rejects summary judgment on this basis.

II. Can Marathon claim insurance when it does not have copies of policies?

■ The insurance company further claims that even if Michigan has not adopted the manifestation theory, Marathon has no coverage for any years other than those for which it can produce policies, 1978–79.

While accepting that it has the burden of proof to show coverage, Plaintiff claims it has met his burden of production with the affidavit and the myriad of other indices of coverage listed in Defendant's Exhibit R. Plaintiff further claims that if Defendant produces sample insurance policies, then Plaintiff can show that no matter what policies he had, Defendant must provide coverage. Plaintiff contends this argument is reasonable because of the standardized nature of insurance policies and

1. *Ray Industries* also holds that an insurer has no duty to defend an insured under a CGL policy, when the insured has received a notice from the United States Environmental Protection Agency that it is a Potential Responsible Party but has not otherwise been sued. The Court believes it likely this case will be disposi-

tive as to American States' duty to defend Plaintiff for the period preceding the commencement of the underlying lawsuit in Genesee County Circuit Court. However, the Court will withhold issuing a ruling on this issue until a new motion for summary judgment is filed by American States and briefs are filed on this point.

because of statements of insurance industry leaders discussing the coverage of pollution under their policies. For these reasons, Plaintiff claims that the Court must first decide his motion to compel discovery.

Defendant claims that it has supplied all that is reasonable and required under *Star Steel v. USF & G*, 186 Mich.App. 475, 465 N.W.2d 17 (1990), which affirmed summary judgment for an insurer in a case with similar facts involving asbestos-related personal injury cases. In *Star Steel*, the policies were also missing. The Court of Appeals stated the trial judge acted reasonably when he ruled that while he believed that coverage existed, he could not let Plaintiff go forward without knowing the language of the policy. *Star Steel* is a linchpin of Defendant's argument, and in examining it, the Court can address many of the issues presented to it in the pending motions.

This Court has four major concerns with *Star Steel*'s analysis and its application to this case. First, it strikes the Court as strange that Defendant, or the insured in *Star Steel*, destroyed the old policies of Western after the companies merged. In this day, environmental and other "time-bomb" liabilities are sufficiently common that American States should have foreseen that preserving the Western policies might be necessary to conduct business.

Furthermore, this Court also believes that a decision such as *Star Steel* encourages insurance companies to destroy copies of policies, in the hopes that no other policy copies will remain available. It may also be true that an insurance company has a duty to maintain policies on file, although this argument has not been raised before the Court.

Second, the *Star Steel* plaintiff did not produce the amount of evidence of coverage that Marathon has produced in this case. This still leaves open the question, however, as to whether Plaintiff has a right to argue that the language of its policy must have been of a particular type given the alternative CGL policies offered by Western during the years in question. This question shall remain open until the Court has the opportunity to consider the extent of Plaintiff's evidence, following discovery, *see infra.*

Third, the dissent in *Star Steel* argued that a factual dispute existed regarding the existence of and language of the policies, and that, therefore, summary disposition was inappropriate. I am inclined to agree. This Court is quite certain that Marathon has not been given sufficient opportunity to demonstrate the existence and terms of its insurance policies under the liberal federal policy for discovery. *See In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905 (6th Cir. 1982). Contrary to Defendant's assertions, such an effort is not unreasonable. Plaintiff must be therefore given an opportunity to dig through the old Western files that American States has not destroyed to attempt to make its case.

Fourth, Defendant quotes standard industry policy language in making other arguments in his brief. *See e.g.*, Defendant's Brief at 23. This tactic undermines his contention that relying on standard policies is insufficient to determine issues of liability at law.

The Court therefore GRANTS Plaintiff's motion to compel discovery, and DENIES summary judgment for Defendant under the *Star Steel* argument.

III. Even if Plaintiff was covered from 1957–1979, the various exclusions of the policies in effect at that time exclude coverage for the slow leak that occurred in the instant case.

█ Plaintiff responds that the pollution exclusion case law does not apply to any policies prior to 1973. This issue, while briefed in some detail, remains inappropriate to discuss without a prior determination as to what policy language existed. With regard to the 1978–79 policies, Defendant is incorrect that the reasoning in *Upjohn v. New Hampshire Ins.*, 438 Mich. 197, 205–209, 476 N.W.2d 392 (1991), applies to this case. Rather, the case seems to be controlled by *Polkow v. Citizens Ins. Co.*, 438 Mich. 174, 179, 476 N.W.2d 382 (1991), *Upjohn's* companion case.

Occurrence is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Ex. P. The pollution exclusion in the 1978–79 policies excludes all coverage for property damage that is not "sudden and accidental." Ex. P.

The issue may then be narrowed to whether there is a sufficient factual record that the leak in the tanks was "sudden and accidental." The facts that Defendant has marshalled in this regard are surprisingly weak. Defendant has Plaintiff Corporation's President's admission that he had no knowledge of any sudden accidents, and the admission that there were holes in the tank. Defendant's brief does not refer to any expert testimony that says such holes would only have been formed from expected wear and tear and not from any accident. At oral argument, Defendant reiterated that he was relying on a "common sense" understanding of what "must" have occurred.

This factual record may be sharply contrasted with that in *Ray Industries, supra,* where "the parties clearly stipulated that the barrels were routinely crushed on a regular basis. We believe that this fact outweighs all others, and that Ray's actions therefore cannot fit the definition of "sudden and accidental" adopted by the Sixth Circuit and the Michigan Supreme Court: ..." *Ray Industries,* 974 F.2d at 768. In the instant case, it is possible, for instance, that the ruptures in the tanks were caused by construction on the property. While the Court agrees with Defendant that it is more probable that the holes were formed by slow deterioration, Defendant has not produced the evidence necessary to remove the factual question from contention.

Defendant cites *Fischer & Porter v. Liberty Mutual Ins. Co.,* 656 F.Supp. 132 (E.D.Pa.1986) as a case on point, but the factual record in *Fischer* does not seem sufficient to have met the standard required in *Polkow.* Consequently, Defendant's argument here does not prevail.

If Defendant files a new motion following Plaintiff's discovery efforts, both parties should analyze *Ray Industries, supra* as it applies to the instant case.

### IV. Estoppel cannot be used to expand the scope of coverage.

■ Plaintiff's estoppel count strikes the Court as somewhat unusual with regard to industry spokespeople. A statement by Western or Defendant executives would have greater weight, but still would not necessarily yield an estoppel claim. There is no claim of detrimental reliance.

Plaintiff's estoppel claim carries greater weight regarding the existence of policies insofar as Defendant has admitted the existence of particular policies. In a letter to Plaintiff of January 21, 1991, Defendant verified the following policies:

| | |
|---|---|
| CM 1 29 94 | 3/72–3/73 |
| CM 3 15 94 | 3/74–3/75 |
| CM 9 02 53 | 3/77–3/78 |
| CM 91 86 56 | 3/78–3/79 |
| UNL 32320 | 3/1/78–3/1/79 |

Defendant is estopped from denying the existence of these policies, but not from denying that the tank leaks lie outside the scope of coverage of these policies. That leaves several other years where the existence of policies is in dispute, and still leaves open the question of whether suit may be brought under the numbered policies for which no copy is available. The estoppel count therefore is legally insufficient except as regard to Defendant's admission as to the existence of numbered policies for particular years.

### V. Count III does not state a claim, and it is precluded by *Star Steel.*

*Star Steel* has been rejected by this Court; however, this Court will be receptive to a later motion by Defendant to dismiss Count III if Plaintiff's discovery does not produce particular policy language.

### VI. Parole evidence rule bars Plaintiffs' efforts to bring in evidence of industry spokespeople.

The parole evidence rule does not bar the admission of evidence when there is no copy of a contract.

THEREFORE, Defendant's motion for Summary Judgment is DENIED, except with regard to Count II, which is DISMISSED, except as it applies to proving the existence of (but not the contents of) insurance policies, admitted in writing by the Defendant.  Plaintiff's motion to compel is GRANTED.

SO ORDERED.