943 F.2d 52
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
INLAND WATERS POLLUTION CONTROL, INC., Plaintiff-Appellant,
v.
NATIONAL UNION FIRE INSURANCE COMPANY, Defendant-Appellee.
 No. 90-2306.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1991.
 
 Before KENNEDY and MILBURN, Circuit Judges, and WILHOIT, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff Inland Waters Pollution Control, Inc. ("Inland Waters") appeals the district court's grant of summary judgment for defendant National Union Fire Insurance Company ("National Union") in this diversity insurance contract action. The principal issues on appeal are (1) whether National Union breached its duty to defend Inland Waters under occurrence based liability insurance policies; (2) whether National Union breached its duty to defend Inland Waters under a claims made liability insurance policy; and (3) whether National Union had a duty to indemnify Inland Waters for settlement of the claim against it. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 
 2
 Inland Waters engages in the business of cleaning up and transporting hazardous and non-hazardous waste materials. On or about January 9, 1981, Inland Waters entered into an agreement with Stricker Paint Products, Inc. ("Stricker") to remove and dispose of several hundred drums containing waste paint materials from Stricker's property. Because Inland Waters believed that the drums contained only solid waste materials, it decided to crush the drums on site in order to make the removal process more efficient. During the crushing process, which occurred in January and early February 1981, it was discovered that some of the drums contained liquids, which escaped into the soil when the drums were crushed. Inland Waters' employees responded to the spill by spreading lime on the ground to absorb the liquid.
 
 
 3
 Inland Waters attempted to dispose of one or two truck loads of crushed drums at a solid waste disposal facility, but the drums were rejected because they contained solvents which were flammable. Inland Waters transported the drums back to the Stricker property and dumped them on the ground. Inland Waters' employees added more lime to the crushed drums and allowed the mixture to remain on the ground until February 10, 1981. On that date, Inland Waters removed the crushed drums and lime mixture, which had solidified, plus a few inches of frozen soil beneath the drums from the Stricker property and transported the waste to the disposal facility, which accepted the haul.
 
 
 4
 On March 25, 1987, the Michigan Department of Natural Resources ("MDNR") issued a Notice Letter to Stricker citing violations it discovered in an inspection conducted on February 12, 1987. In response to directives of the MDNR, Stricker hired Groundwater Technology, Inc. to conduct a hydrogeological investigation of their property and to prepare a plan of remediation. The investigation revealed a significant amount of contamination in the soil and groundwater in the area where Inland Waters had performed its drum crushing operations six years earlier.
 
 
 5
 On June 5, 1987, Stricker filed an action against Inland Waters in the Wayne County Circuit Court alleging that Inland Waters spilled waste paint materials on Stricker's property resulting in contamination of the property and the environment. Inland Waters retained counsel to defend the Stricker action. On March 2, 1988, counsel for Inland Waters sent various pleadings from the Stricker action to Inland Waters' liability insurer, National Union, demanding coverage under "claims made" and "occurrence" insurance policies.
 
 
 6
 On April 13, 1988, National Union forwarded the pleadings to the American International Adjustment Company which assigned counsel to review coverage issues raised by the Stricker action. On February 17, 1989, National Union sent two denial of coverage letters to Inland Waters. The first letter denied coverage under the occurrence policies because the alleged contamination occurred in January and February of 1981, before the effective date of Inland Waters' first occurrence policy of August 1, 1981. In a second letter, National Union denied coverage under the claims made policies because all the "pollution events" involved took place prior to the retroactive coverage date of August 1, 1985. Among other reasons, National Union's letters also denied coverage on the grounds that the claims at issue were subject to "pollution exclusions" found in both types of its policies.
 
 
 7
 Pursuant to Michigan Court Rules, the Stricker action was submitted to mediation, and mediators recommended that the case be settled with the payment of $120,000 by Inland Waters to Stricker. On March 17, 1989, Inland Waters notified National Union of a proposed settlement of the case, and National Union did not object to the proposal. On April 6, 1989, pursuant to the settlement agreement, Inland Waters paid Stricker $105,000, and the Stricker action was dismissed with prejudice on April 7, 1989.
 
 
 8
 Inland Waters filed the present action against National Union on November 15, 1989, seeking to recover the $105,000 it paid Stricker, plus an additional amount in excess of $30,000 for costs incurred in defending the Stricker action. In Counts I and II, Inland Waters alleged that National Union breached its duty to defend under the occurrence and claims made policies. In Count III, Inland Waters alleged that National Union breached its duty to indemnify it for the full cost of the settlement with Stricker, and in Count IV, Inland Waters sought to recover damages in excess of $50,000 for National Union's alleged bad faith denial of coverage.
 
 
 9
 On April 13, 1990, National Union filed a motion for summary judgment arguing that the claim for which Inland Waters sought coverage occurred before the effective date of any of its policies. National Union also argued for summary judgment on the grounds that the risk was not insurable because Inland Waters concealed from National Union its knowledge of the spill on Stricker's property at the time Inland Waters obtained its first insurance policy. National Union also sought to have the bad faith claim dismissed on the grounds that it had a reasonable basis for denying coverage. On April 17, 1990, Inland Waters filed a cross-motion for summary judgment, and on June 29, 1990, the district court assigned the case to the magistrate for a hearing and determination of the pending motions for summary judgment.
 
 
 10
 On August 24, 1990, the magistrate issued a Report and Recommendation in which he recommended that National Union's motion for summary judgment be granted on the grounds that the damage to Stricker's property occurred prior to the effective date of any National Union policy. The magistrate also recommended that the bad faith claim in Count IV be dismissed.[1] Inland Waters filed objections to the Report and Recommendation, and after hearing oral arguments and conducting a de novo review, the district court entered an order on October 20, 1990, adopting the magistrate's Report and Recommendation. This timely appeal followed.
 
 II.
 
 11
 Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. This court reviews the district court's grant of summary judgment de novo, viewing all facts and inferences drawn therefrom in the light most favorable to the non-moving party. Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1472 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Because jurisdiction in this case is based on diversity of citizenship, Michigan law governs substantive matters, while federal law governs procedural issues. FL Aerospace v. Aetna Casualty & Surety Co., 897 F.2d 214, 217 (6th Cir.), cert. denied, 111 S.Ct. 284 (1990). We review de novo the district court's determinations of Michigan law. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991).
 
 
 12
 The Michigan Supreme Court has recognized that an insurance contract "is not a hard-bargained contract drafted after mutual consideration of the positions of two negotiators with equal or substantially equal skills and resources." Powers v. Detroit Auto. Inter-Insurance Exchange, 427 Mich. 602, 608, 398 N.W.2d 411, 413 (1986). Rather, it is a contract of adhesion. Id. Therefore, Michigan courts construe any ambiguity in the language of an insurance policy in favor of the insured. Allstate Ins. Co. v. Freeman, 432 Mich. 656, 665, 443 N.W.2d 734, 739 (1989). However, where the provisions of an insurance contract are clear and unambiguous, Michigan courts will enforce the terms of the contract as written. Id., 432 Mich. at 666, 443 N.W.2d at 739. "Construction of an insurance contract containing unambiguous language is a question of law for the court." Jones v. Farm Bureau Mut. Ins. Co., 172 Mich.App. 24, 27, 431 N.W.2d 242, 244 (1988).
 
 
 13
 Initially, we examine the language of the policies to determine whether the relevant provisions are clear and unambiguous. The first policy issued by National Union to Inland Waters was a Comprehensive General Liability ("CGL") policy for the period of August 1, 1981, to August 1, 1982, which obligates National Union to
 
 
 14
 pay on behalf of the Insured all sums which the Insured shall be legally obligated to pay as damages because of
 
 A. bodily injury or
 B. property damage
 
 15
 to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....
 
 
 16
 The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of Insured." The policy defines "property damage" as:
 
 
 17
 (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 18
 National Union issued Inland Waters four subsequent one-year "occurrence" policies which were virtually identical to the first.
 
 
 19
 Beginning August 1, 1986, National Union also issued several one-year "claims made" policies to Inland Waters which obligates National Union to
 
 
 20
 pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.... This insurance does not apply to "bodily injury" or "property damage" which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy period. The "bodily injury" or "property damage" must be caused by an "occurrence."
 
 
 21
 Inland Waters seeks coverage under the policy issued for the period of August 1, 1987, to August 1, 1988, which has a "retroactive date" of August 1, 1985. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy defines "property damage" as:
 
 
 22
 a. Physical injury to tangible property, including all resulting loss of use of that property; or
 
 
 23
 b. Loss of use of tangible property that is not physically injured.
 
 
 24
 Insurance policy provisions substantially similar to those involved in this case have been found to be clear and unambiguous under Michigan law. See Freeman, 432 Mich. at 666, 443 N.W.2d at 739; Stine v. Continental Casualty Co., 419 Mich. 89, ----, 349 N.W.2d 127, 137-38 (1984); Detrex Chem. Indus. v. Employers Ins. of Wausau, 746 F.Supp. 1310, 1324 (N.D.Ohio 1990) (applying Michigan law); Dow Chemical Co. v. Associated Indem. Corp., 724 F.Supp. 474, 481 (E.D.Mich.1989). Under Michigan law, an ambiguity is one "arising by reason of inconsistency, obscurity or an inherent uncertainty of the language adopted, such that the effect of the words in the connection used is either to convey no definite meaning or a double one." Stine, 419 Mich. at ----, 349 N.W.2d at 137 (quoting Zillwaukee Twp. v. Saginaw-Bay City R. Co., 213 Mich. 61, 69, 181 N.W. 37 (1921)). There is no "inconsistency, obscurity, uncertainty, indefiniteness, or double meaning" in the relevant language of the policies at issue in this case. Id. "Although the concept expressed by these carefully selected words may be difficult to apply to some claims made against the policies, the meaning of the operative language is not ambiguous." Dow Chemical, 724 F.Supp. at 481.
 
 A. Occurrence Policies
 
 25
 Inland Waters argues that National Union had a duty to defend the Stricker action under the occurrence policies because Stricker's complaint alleged property damage which could be covered by those policies. Inland Waters contends that the definition of "occurrence" in the policies is broad enough to cover the damage to Stricker's property which was continually occurring during the policy periods as contaminants migrated through the soil and groundwater. Inland Waters asserts that the continuous trigger theory of coverage has been recognized in Michigan and is applicable to this case. See United States Fidelity and Guar. Co. v. Thomas Solvent Co., 683 F.Supp. 1139, 1163 (W.D.Mich.1988). Inland Waters also relies on New Castle County v. Continental Casualty Co., 725 F.Supp. 800 (Del.1989), aff'd in part and rev'd in part, 933 F.2d 1162 (3d Cir.1991), for the proposition that property damage occurring over a period of time triggers the insurer's duty to defend even though the act or omission causing the damage occurred earlier. See also Gruol Constr. Co. v. Insurance Co. of North America, 11 Wash.App. 632, ----, 524 P.2d 427, 430 (1974) (coverage provided under all policies in effect during six-year period in which building was damaged by dry rot).
 
 
 26
 Inland Waters contends that summary judgment was inappropriate because there is an issue of fact as to when contamination of Stricker's groundwater first occurred. Inland Waters attempts to draw a distinction between damage to Stricker's soil and damage to the groundwater. Inland Waters also notes that in Stricker's state court action the court denied its motion for summary disposition on the basis of the six-year statute of limitations because the court concluded that there was continuing damage of Stricker's property. Inland Waters asserts that if continuing damage to the property allowed the Stricker action to proceed, it should result in this court holding that the property damage was covered by the occurrence policy.[2]
 
 
 27
 National Union responds by arguing that Michigan law does not recognize the continuous trigger theory in the context of a single release of contaminants. National Union asserts that damage to Stricker's property occurred in January or February 1981 when Inland Waters spilled the liquid waste onto the soil while crushing the drums. National Union contends that migration of a pollutant through the soil from a past spill does not constitute "continuous or repeated exposure" to the pollutant. National Union asserts that the magistrate properly relied on Dow Chemical Co. v. Associated Indemnity Corp., 724 F.Supp. 474 (E.D.Mich.1989), in holding that the injury in fact trigger applied to the occurrence policies. Finally, National Union distinguishes Thomas Solvent and New Castle on grounds that those cases involved a gradual release of pollutants rather than a one-time spill.
 
 
 28
 Four principal theories regarding trigger of coverage have been recognized.
 
 
 29
 If coverage is triggered at the time that personal injury or property damage becomes known to the victim or property owner, the approach is identified as the "manifestation theory." If coverage is triggered when real personal injury or actual property damage first occurs, the approach is called the "injury in fact theory." If coverage is triggered when the first exposure to injury-causing conditions occurs, then the court is said to have chosen the "exposure theory." Finally, if coverage is triggered in a manner such that insurance policies in effect during different time periods all impose a duty to indemnify, then the approach is labelled a "continuous" or "multiple" trigger theory.
 
 
 30
 Dow, 724 F.Supp. at 478 (citations omitted) (emphasis in original). No Michigan court has decided which trigger of coverage theory is applicable in a case involving environmental damage caused by a discharge of pollutants. However, the Michigan Court of Appeals has recently addressed the trigger of coverage issue in a case involving personal injury and property damage in Transamerica Insurance Co. of Michigan v. Insurance Co. of North America, --- Mich.App. ---- (No. 110954, May 6, 1991).
 
 
 31
 The facts in Transamerica are as follows. From 1977 to 1982, Frost-Guard Insulation, Inc. insulated homes and businesses with urea-formaldehyde foam insulation (UFFI), which allegedly releases harmful gases. The gas release "is apparently at its greatest level immediately after installation but gradually tapers off." Id., --- Mich.App. at ----. A number of homeowners in whose homes UFFI had been installed filed an action against Frost-Guard alleging personal injury and property damage. Transamerica Insurance Co., which insured Frost-Guard under a CGL policy from June 1, 1979, through June 1, 1981, and July 1, 1982, through July 1, 1983, provided a defense and indemnification to Frost-Guard in the underlying action by the homeowners. Several other insurance companies insured Frost-Guard from 1978 through 1983, and Transamerica filed an action seeking a declaration that the other insurance carriers were liable under their policies for a pro rata share of the defense costs and liability incurred by Frost-Guard.
 
 
 32
 On appeal from the trial court's grant of summary judgment for the other insurance carriers, the Michigan Court of Appeals in Transamerica held that coverage was triggered upon manifestation of injury or damage and not continuously throughout a claimant's exposure to UFFI gas. The court rejected the exposure theory as being inconsistent with the relevant CGL policy language. Under the manifestation theory adopted by the court, the carrier on risk at the time personal injury or property damage manifests itself to the injured party is liable to the insured.
 
 
 33
 A decision of an intermediate state appellate court is not binding on a federal court in a diversity case if the federal court is "convinced by other data that the state's highest court would determine otherwise." Bailey v. V & O Press Co., 770 F.2d 601, 604 (6th Cir.1985). Neither party has argued for adoption of the manifestation theory in this case, and two federal district courts applying Michigan law have rejected the manifestation theory in favor of the "injury in fact" theory. See Detrex Chemical Industries v. Employers Ins., 746 F.Supp. 1310, 1321, 1325 (N.D.Ohio 1990) (applying Michigan law); Dow Chemical Co. v. Associated Indem. Corp., 724 F.Supp. 474, 485 (E.D.Mich.1989).
 
 
 34
 We conclude that Transamerica is distinguishable, and we reject application of the manifestation theory in this case. The manifestation theory generally has been applied in cases involving a latent disease, such as asbestosis, where, due to the length of time between initial exposure to the harmful substance and diagnosis of the disease, there are multiple insurance carriers who are potentially liable. See Eagle-Picher Indus., Inc. v. Liberty Mutual Ins. Co., 523 F.Supp. 110, 118 (D.Mass.1981), modified, 682 F.2d 12 (1st Cir.1982). Similar factors were present in Transamerica and made application of the manifestation theory appropriate in that case. However, those factors are not present in this case, and their absence counsels against application of the manifestation theory. This case involves a single release of contaminants, and only one insurance carrier who is potentially liable. Under these circumstances, application of the manifestation theory could produce a result at variance with the terms of the insurance contract between Inland Waters and National Union. Accordingly, we are not bound by the Transamerica decision, and we shall examine other decisions to determine how the Michigan Supreme Court would decide the trigger of coverage issue.
 
 
 35
 In United States Fidelity and Guaranty Co. v. Thomas Solvent, 683 F.Supp. 1139 (W.D.Mich.1988), the insured was a defendant in public and private pollution litigation alleging that groundwater had been contaminated by a leak in one of the insured's underground storage tanks for industrial solvents. The court concluded that the insurers had a duty to defend the insured because "none of the CGL insurers at this point has been able to demonstrate that the underlying claims ... are totally outside the scope of their policies' coverage." Id. at 1161. The court held that where "the underlying complaints allege continuing releases and continuing injuries and damages, an occurrence has been satisfactorily alleged during all the GCL (sic) insurers' policy periods...." Id. at 1163. In reaching the conclusion that the insurers had a duty to defend, the court observed that there was "no reason why some variation of the 'continuous trigger' theory should not be seen as applicable here--at least at this juncture where the facts are quite complex and the issue of precisely when the so-called 'continuous occurrences' should be 'fixed' is so hotly disputed." Id. at 1163. The court stated that the "continuous trigger theory would clearly require all the insurers to defend where the date upon which the 'continuous' damage first occurred has not been settled and/or where continuing exposure (damage) is also alleged." Id. The court observed that under a continuous trigger theory "every policy in effect at any time during the (continuous) injury process--from the initial exposure(s) until the last manifest development of bodily injury or property damaged would be triggered for coverage." Id.
 
 
 36
 In Dow Chemical Co. v. Associated Indem. Corp., 724 F.Supp. 474 (E.D.Mich.1989), the district court concluded that the language in a CGL policy supported the injury in fact trigger approach. Dow involved coverage issues arising from a series of product-related property damage claims against the manufacturer of a mortar additive which caused corrosion, resulting in damage to buildings which was manifested years after completion of construction. The court described the four principal trigger of coverage theories and stated that it could "discern no consistent pattern in the myriad trigger cases that prescribes the specific trigger theory to apply in a specific type of case." Id. at 479. The court concluded that "trigger rulings are most appropriately derived by reference to the operative policy language, as opposed to the judicial gloss placed upon similar language in ostensibly analogous cases." Id. Accordingly, the court examined the policy language and reached the following conclusions:
 
 
 37
 (1) property damage triggers coverage;
 
 
 38
 (2) the property damage which triggers coverage is the property damage for which coverage was sought in the underlying claims;
 
 
 39
 (3) coverage is triggered when the physical injury to, or destruction of, tangible property that constitutes such property damage first occurs;
 
 
 40
 (4) an event (including exposure to conditions) which has not yet caused such property damage does not trigger coverage;
 
 
 41
 (5) property damage occurs when such injury or destruction first occurs, whether at the time of manifestation or prior to manifestation.
 
 
 42
 Id. at 481. The court rejected the exposure and manifestation trigger theories and concluded that "the injury in fact trigger is most consistent with the CGL policy language." Id. at 485.
 
 
 43
 In Detrex Chemical Industries v. Employers Ins., 746 F.Supp. 1310, 1324-25 (N.D.Ohio 1990), the court rejected the continuous trigger theory of coverage and concluded that "the Michigan Supreme Court would adopt the injury in fact trigger of coverage...." Detrex involved a declaratory judgment action by the insured seeking a determination that its liability insurer had a duty to defend it in various environmental proceedings arising from the insured's discharge of chemical solvents into the environment. Arguing for application of the continuous trigger theory of coverage, the insured asserted:
 
 
 44
 [T]he occurrence is the cause of the damage, and coverage is triggered by the result during the policy period, not the cause. Therefore, it is the resulting damage during the policy period that triggers coverage, regardless of the timing of the "occurrence" or cause, and continuous damage triggers multiple successive policies.
 
 
 45
 Id. at 1319. The court rejected the insured's argument and instead followed Dow by holding that the "occurrence" clause in the policy was not ambiguous, and that under its plain meaning, injury in fact triggered coverage. Id. at 1324-25.
 
 
 46
 A case relied on by Inland Waters which does not apply Michigan law also merits discussion. In New Castle County v. Continental Casualty Co., 725 F.Supp. 800 (D.Del.1989), a county sought coverage under CGL insurance policies for claims arising from contamination of neighboring wells allegedly caused by pollution leaching from a county landfill. The landfill began operating in 1969, and the County acquired liability insurance from Continental Casualty Company ("CNA") beginning August 1, 1973, and continuing through January 1, 1975. CNA argued that there were three possible triggering events: "(1) when the dumping first began; (2) when leaching first commenced; and (3) when the pollution was first discovered." Id. at 809. The court observed that the trigger issue turned on the definition of "property damage." The policy defined property damage as "injury to ... tangible property." Id. at 810. The court noted that no term in the policy imposed a "discrete temporal limitation on 'injury.' " Id. Thus, the court concluded, "The definition of the term 'property damage' does not indicate at what point in time the gradual leaching of contaminants from a landfill will trigger the policy." Id. The court analogized the slow leaching of pollutants from a landfill to the progressive bodily injury caused by asbestosis. The court noted that the continuous trigger theory had been applied in asbestosis cases, and the court concluded that continuing damage caused by the gradual spread of leachate from a landfill was sufficiently analogous to the development of an insidious disease to make application of the continuous trigger theory appropriate. Id. at 813.
 
 
 47
 New Castle and Thomas Solvent, the cases principally relied upon by Inland Waters, are distinguishable from the present case. First, both cases involved continuing contamination caused by leaking and leaching from sources of pollution in active use during the policy periods. Conversely, the present case involves contamination allegedly caused by a single exposure to a pollutant prior to the policy period. In New Castle and Thomas Solvent, the date upon which the continuous damage first occurred could not be determined. New Castle, 725 F.Supp. at 812; Thomas Solvent, 683 F.Supp. at 1163. However, in the present case the date upon which damage first occurred is ascertainable.
 
 
 48
 The analysis employed by the New Castle court is consistent with the approach taken by the courts in Dow and Detrex. In each case the court considered whether the coverage issue could be resolved by reference to the policy language. In New Castle the court explained that its conclusion was "based primarily on the ambiguity of the term 'injury' in that the policy imposes no temporal limitation on the word." 725 F.Supp. at 812. On the other hand, in Dow and Detrex, the courts concluded that the policy language was not ambiguous and supported the injury in fact trigger theory. Thus, we shall examine the relevant policy language to determine if it unambiguously indicates what triggers coverage.
 
 
 49
 As mentioned earlier, the relevant provisions of the occurrence policies are substantially similar to the policies at issue in Detrex and Dow. The language of the occurrence policies in this case may be combined to read as follows:
 
 
 50
 The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of ... property damage ... caused by ... an accident, including continuous or repeated exposure to conditions, which results in ... physical injury to or destruction of tangible property which occurs during the policy period.
 
 
 51
 The policy language indicates that coverage is triggered by property damage which occurs during the policy period. The Dow and Detrex courts held that similar policy language supported application of the injury in fact trigger theory. Detrex, 746 F.Supp. at 1324-25; Dow, 724 F.Supp. at 481. Accordingly, we believe that if the Supreme Court of Michigan were confronted with this issue, it would hold that injury in fact triggers coverage under the occurrence policies in this case. However, resolution of the trigger of coverage issue is not determinative of whether National Union breached its duty to defend Inland Waters in the Stricker action.
 
 
 52
 An insurance company's duty to defend an action against the insured depends upon the allegations in the complaint and "may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." Detroit Edison Co. v. Michigan Mut. Ins. Co., 102 Mich.App. 136, 142, 301 N.W.2d 832, 835 (1980). "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." Id. "The court must resolve any doubt pertaining to the duty to defend in favor of the insured." Freeman, 432 Mich. at 662, 443 N.W.2d at 737.
 
 
 53
 The Stricker complaint alleged that when Inland Waters crushed the drums on Stricker's property it "allowed the waste paint materials in the drums to escape into the underlying soil, with the result that there has been and continues to be contamination of Stricker's property and the environment." The complaint also alleged that due to fraudulent concealment on the part of Inland Waters regarding the adequacy of remedial action taken, "Stricker did not know, nor did it have reason to know, of the contamination, its consequences or the responsibility of Inland for the contamination until early 1987." The complaint further alleged that "Stricker has suffered and will continue to suffer injury and damages" as a direct and proximate result of Inland Waters' wrongful conduct.
 
 
 54
 As noted earlier, Inland Waters urges the court to draw a distinction between damage to Stricker's soil and damage to the groundwater. We find this distinction to be valid based on the language of Stricker's complaint. The Stricker complaint alleges two distinct injuries. First, Stricker alleges contamination of its property; i.e., its soil. Second, Stricker alleges contamination of the "environment, including the groundwater." The groundwater is the property of the State of Michigan. See Polkow v. Citizens Ins. Co. of America, 180 Mich.App. 651, ----, 447 N.W.2d 853, 855-57 (1989), appeal granted, 435 Mich. 863 (1990). Although Stricker brought the action for damage to the groundwater, it was liable to the State of Michigan for damages to the State's groundwater. Had the State brought the action directly for damages to its groundwater, it seems clear that coverage would not be triggered until the groundwater became contaminated. Accordingly, we shall review the district court's grant of summary judgment with this distinction in mind.
 
 
 55
 We hold that the district court properly granted summary judgment with regard to Stricker's claim of property damage. The damage to Stricker's property was contamination of its soil. Under the injury in fact trigger theory, which we have concluded the Supreme Court of Michigan would apply in this case, damage to Stricker's soil first occurred in January or February 1981 when Inland Waters allowed liquid waste to escape into the soil underlying the drums. Therefore, there was no coverage for the contamination of Stricker's soil under the occurrence policies which were first issued in August 1981, and we hold that under Michigan law National Union did not breach its duty to defend Inland Waters as to Stricker's claim for property damage.
 
 
 56
 Concerning damage to the groundwater, we hold that the district court erred by granting summary judgment because there is a genuine issue of material fact regarding when the groundwater first became contaminated. Although Inland Waters allowed the liquid waste to escape into the soil in January or February 1981, it cannot be determined from the present record the length of time required for the contaminants to filter through the soil and reach the groundwater. If evidence establishes that the groundwater was first contaminated after August 1981, there could be coverage under the occurrence policy, and National Union could be liable for breach of the duty to defend.[3] On the other hand, if evidence establishes that the groundwater first became contaminated before August 1981, there would be no coverage, and, hence, no duty to defend. Accordingly, we reverse and remand the case to the district court for resolution of the question of fact as to when the groundwater first became contaminated.
 
 B. Claims made policies
 
 57
 Inland Waters next asserts that National Union had a duty to defend the Stricker action under the "claims made" policy. Generally, a claims made policy "is one which indemnity is provided no matter when the alleged error or omission or act of negligence occurred, provided the misdeed complained of is discovered and the claim for indemnity is made against the insurer during the policy period." Stine v. Continental Casualty Co., 419 Mich. 89, ----, 349 N.W.2d 127, 130 (1984). However, some claims made policies, like the one in this case, provide coverage only for acts, omissions or property damage which occur during the policy period and for which a claim is made during that period. Id. The policy under which Inland Waters seeks coverage was issued for the period of August 1, 1987, to August 1, 1988, and it has a "retroactive date" of August 1, 1985. The policy requires that a claim for property damage be first made against the insured during the policy period, and it also precludes coverage for property damage which occurred before the retroactive date.
 
 
 58
 Inland Waters argues that coverage was provided by the claims made policy because Stricker's claim was first made against Inland Waters during the 1987-88 policy period.[4] Inland Waters also contends that the Stricker claim satisfies the retroactive date provision of the policy because damage was occurring at the Stricker site subsequent to August 1, 1985. Inland Waters maintains that although damage may have begun before 1985, it continued between 1985 and 1988.
 
 
 59
 From our discussion of the occurrence policy, it is clear that a dispute regarding policy coverage requires examination of the relevant policy language. The claims made policy under which Inland Waters seeks coverage may be summarized as follows:
 
 
 60
 [National Union] will pay those sums that [Inland Waters] becomes legally obligated to pay as damages because of ... [p]hysical injury to tangible property ... caused by ... an accident, including continuous or repeated exposure to substantially the same generally harmful conditions.... This insurance does not apply to ... "property damage" which occurred before the Retroactive Date ... [and it] applies to ... "property damage" only if a claim for damages ... is first made against [Inland Waters] during the policy period.
 
 
 61
 As noted earlier, similar language in a claims made policy has been deemed unambiguous under Michigan law. See Stine, 419 Mich. at ----, 349 N.W.2d at 137-38.
 
 
 62
 Again, we must review the district court's grant of summary judgment in view of the distinction between contamination of Stricker's soil and contamination of the groundwater. We hold that Stricker's claim for property damage; i.e., contamination of its soil, was not covered by the claims made policy, and, consequently, National Union had no duty to defend Inland Waters as to the property damage claim. The policy specifically excludes property damage which occurred before the retroactive date of August 1, 1985. Inland Waters' argument that there was continuing damage to Stricker's property is simply an appeal for application of the continuous trigger theory of coverage. However, the injury in fact trigger theory is more consistent with the policy language, and we conclude that the Michigan Supreme Court would apply that theory in this case. Under the injury in fact theory, coverage was triggered when Stricker's property was first damaged, that being in January or February 1981 when Inland Waters allowed the liquid waste to escape into the soil. Therefore, applying the injury in fact trigger, there would be no coverage under the claims made policy because contamination of Stricker's soil first occurred before the retroactive date of the policy. Consequently, National Union did not breach its duty to defend under the claims made policy as to Stricker's claim for property damage.
 
 
 63
 Concerning Stricker's claim regarding contamination of the groundwater, we hold that there is a genuine issue of material fact regarding coverage under the claims made policy. Under the injury in fact trigger of coverage, there is a genuine issue of material fact as to when the groundwater first became contaminated. Although Inland Waters allowed the liquid waste to escape into the soil in January or February 1981, it cannot be determined from the present record the length of time required for the contaminants to filter through the soil and reach the groundwater. If evidence establishes that the groundwater was first contaminated after August 1, 1985, there could be coverage under the claims made policy, and National Union could be liable for breach of the duty to defend. Conversely, if evidence establishes that the groundwater first became contaminated before August 1, 1985, there would be no coverage and no duty to defend. Therefore, we reverse and remand the case to the district court to resolve the question of fact regarding when the groundwater first became contaminated.
 
 C. Duty to indemnify
 
 64
 Inland Waters argues that because National Union breached its duty to defend, it must indemnify Inland Waters for the amount of the settlement and litigation expenses incurred. As we have concluded that Inland Waters had no coverage for the property damage claims made in the Stricker action, it follows that National Union had no duty to indemnify Inland Waters for contamination of Stricker's soil. Allstate Ins. Co. v. Freeman, 432 Mich. 656, 661 n. 1, 443 N.W.2d 734, 737 n. 1 (1989). Conversely, because we hold that the district court erred by granting summary judgment as to the claim of contamination of the groundwater, we do not reach the issue of whether National Union had a duty to indemnify Inland Waters in that regard.
 
 III.
 
 65
 Our decision in this case is limited to the unique facts presented, and for the reasons stated, the district court's grant of summary judgment is AFFIRMED in part and REVERSED in part, and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Inland Waters does not address the dismissal of its bad faith claim. Therefore, the claim should be deemed abandoned on appeal. See McMurphy v. Flushing, 802 F.2d 191, 198-99 (6th Cir.1986)
 
 
 [2]
 Inland Waters also argues that a pollution exclusion clause in the occurrence policies did not excuse National Union from fulfilling its duty to defend the Stricker action. However, National Union did not raise the pollution exclusion clause in its motion for summary judgment, and National Union does not argue that it provides an alternative basis for affirming the district court's grant of summary judgment. Accordingly, the issue is not before this court
 
 
 [3]
 Although National Union argued for summary judgment on the basis of known risk, the district court did not address this argument since it determined that coverage was barred under both the occurrence policies and the claims made policy
 
 
 [4]
 Although Stricker filed its action against Inland Waters on June 5, 1987, the summons and complaint were not served upon Inland Waters until November 30, 1987