RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 06a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMERICAN & FOREIGN INSURANCE COMPANY, INC.,
*Plaintiff-Appellee,*

*v.*

SEQUATCHIE CONCRETE SERVICES, INC.; KNOXVILLE
CAST STONE, INC.,

*Defendants-Appellants,*

GATLINBURG, LLC; FRIZZELL CONSTRUCTION
COMPANY, INC.,

*Defendants.*

No. 04-6524

>

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 02-00632—R. Leon Jordan, District Judge.

Argued:  December 1, 2005

Decided and Filed:  February 10, 2006

Before:  SILER and GRIFFIN, Circuit Judges; KATZ, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Rebecca B. Murray, KENNERLY, MONTGOMERY & FINLEY, Knoxville, Tennessee, for Appellants.  William G. Colvin, SCHUMAKER, WITT, GAITHER & WHITAKER, Chattanooga, Tennessee, for Appellee.  **ON BRIEF:**  Rebecca B. Murray, Jack M. Tallent II, KENNERLY, MONTGOMERY & FINLEY, Knoxville, Tennessee, for Appellants.  William G. Colvin, SCHUMAKER, WITT, GAITHER & WHITAKER, Chattanooga, Tennessee, for Appellee.

---

## OPINION

---

KATZ, District Judge.  In this case, the Court is asked to decide whether the "loss-in-progress doctrine" bars insurance coverage under a commercial policy where, at the time of the policy's inception, the insured knew about damages that could underlie a third-party's claim against

---

[*]The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

it. The district court concluded that the loss-in-progress doctrine did apply under such circumstances, and that the policy did not cover the claim. This Court affirms.

### I. Background

Gatlinburg, LLC ("Gatlinburg") built a hotel in Gatlinburg, Tennessee. Frizzell Construction Company ("Frizzell") was the general contractor. A portion of the hotel's exterior is clad in "split face" concrete block manufactured and sold by Defendant-Appellant Knoxville Cast Stone, Inc. ("KCSI"). (Defendant-Appellant Sequatchie Concrete Services, Inc., is the parent company of KCSI. References to "KCSI" include Sequatchie.)

Before ordering the split face block, Frizzell and Gatlinburg told a KCSI sales representative that they wanted it to contain extra waterproof additive. However, the purchase order from which KCSI processed the block did not say so, and the block KCSI delivered to Gatlinburg was not waterproof.

As Frizzell was installing the block on the hotel's exterior, it noticed that water penetrated the material. In October, 1995, Frizzell told KCSI about the problem, and KCSI replied that water penetration was normal at that stage of the construction process. Water continued to penetrate the block throughout the remainder of construction. Throughout 1996, Gatlinburg and Frizzell communicated their concern about the block to KCSI, which maintained that leakage was normal until the building openings were sealed. But, after Frizzell had installed the roof and sealed the building's openings, the block still leaked when it rained. Water damaged the hotel's sheetrock and interiors.

On September 22, 1996, Frizzell wrote to KCSI, in part, that:

Water penetration was a concern of the Owner, the Architect, and ourselves prior to ordering the block. Your representative told all of us that your block would be waterproof and require no additional sealer.

The roof is on, the gutters are in place, and the building is still absorbing water through the block to the inside. The Owner's [sic] wanted me to make you aware there is a potential claim against your company for the corrective work which will be required.

On November 21, 1996, Frizzell again wrote to KCSI, stating, in part, that:

[C]oncerning water penetrating through the block to the interior of the building, the Owner and our company want you to be aware that considerable money has been spent and will be expended due to this problem.

. . . .

Your company will be expected to pay all costs associated with water penetrating the split face block.

KCSI contacted its corporate counsel to address the issue. On December 30, 1996, counsel responded to Frizzell that the purchase order did not mention waterproofing or water repellant, and that, "accordingly, we do not believe that [KCSI] has any liability to your company or the owner for this project. We would appreciate it if you would advise us of any additional information that would lead us to a contrary conclusion." The block continued to leak throughout 1997 and 1998, causing more damage to the hotel's interior. In 1998, Gatlinburg and Frizzell sued KCSI in state court.

New Hampshire Insurance Company ("NHIC") was KCSI's commercial general liability insurer in 1996. On January 1, 1997, Plaintiff-Appellee American & Foreign Insurance Company ("AFIC") issued a comprehensive general liability policy to KCSI. The policy only covers bodily injury or property damage that "occurs during the policy period," which ran from January 1, 1997, to January 1, 1998. Initially, both NHIC and AFIC defended KCSI in the state-court lawsuit, but eventually each denied coverage, claiming no water damage occurred during the respective policy periods. Specifically, in June, 2000, AFIC determined that the water intrusion Gatlinburg and Frizzell complained of had accrued prior to January 1, 1997.

KCSI settled the lawsuit for $950,000. NHIC and AFIC filed separate declaratory judgment actions in federal court, each claiming its policy did not cover the claim. The cases were consolidated, and KCSI counterclaimed, seeking a declaration of coverage and damages for breach of contract, breach of the implied duty of good faith, and violation of the Tennessee Consumer Protection Act.

The district court concluded that AFIC had no liability to KCSI under the "loss-in-progress doctrine," which precludes coverage "where the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.*, 997 F.2d 172, 178-79 (6th Cir. 1993). The district court found that "by late November 1996, KCSI had subjective awareness of 'a threat of loss [water damage] so immediate that it might fairly be said that the loss was in progress" before AFIC's coverage began on January 1, 1997. The district court therefore granted AFIC's motion for summary judgment and denied KCSI's motion for summary judgment as to AFIC. (The district court's disposition of the case as to NHIC is not at issue in this appeal.) After the district court denied KCSI's motion to alter or amend judgment, which raised no new arguments, KCSI appealed from that order and the order denying its motion for summary judgment and granting AFIC's motion.

## II. Discussion

This Court reviews de novo a district court's grant of summary judgment, as well as a denial of summary judgment, if made on purely legal grounds. *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Detroit Water Team Joint Venture v. Agric. Ins. Co.*, 371 F.3d 336, 338 (6th Cir. 2004). Once the movant satisfies its burden by demonstrating the absence of a genuine issue of material fact, the nonmoving party must produce specific facts demonstrating a genuine issue of fact for trial if it is to withstand summary judgment. *Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 832 (6th Cir. 2005). "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

The denial of summary judgment is ordinarily considered an interlocutory order and thus not appealable. *Phelps v. Coy*, 286 F.3d 295, 298 (6th Cir. 2002). "However, when the appeal from a denial of summary judgment is presented together with an appeal from a grant of summary judgment, we have jurisdiction to review the appropriateness of the district court's denial." *Thomas v. United States*, 166 F.3d 825, 828 (6th Cir. 1999).

### A. *Loss-in-Progress Doctrine*

The district court granted summary judgment in favor of AFIC and denied KCSI's summary judgment motion based on the application of the "loss-in-progress doctrine." Generally, that doctrine embodies "the principle that losses which exist at the time of the insuring agreement, or which are so probable or imminent that there is insufficient 'risk' being transferred between the insured and the insurer, are not proper subjects of insurance." 7 Couch on Insurance § 102.8.

This case is governed by Tennessee insurance law. *See Vencor, Inc. v. Standard Life & Accident Ins. Co.*, 317 F.3d 629, 634 (6th Cir. 2003). No Tennessee case has expressly spoken on the "loss-in-progress doctrine." However, this Court has provided a formulation of the doctrine, in *Inland Waters*. In that case, this Court found that the Michigan Supreme Court "would recognize the 'loss in progress' doctrine as we have defined it in an appropriate case. The doctrine has been described as a fundamental principle of insurance law . . . ." 997 F.2d at 178. The Court continued, "[w]e are unaware of any case in which a court has rejected the doctrine as internally fallacious or inconsistent with the general principles of insurance law . . . ." *Id.* at 179. This Court today likewise concludes that the Tennessee Supreme Court would adopt its definition of the loss-in-progress doctrine, if the case was before it. *Cf. Gassaway v. Travelers Ins. Co.*, 439 S.W.2d 605, 608 (Tenn. 1969) (defining the term "accident" "as used in liability insurance policies as an event not reasonably to be foreseen, unexpected and fortuitous"); *Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*, Nos. 1:02-CV-231, 1:02-CV-298, 1:02-CV-083, 2003 WL 23218046, at *16 (E.D. Tenn., Dec. 12, 2003) (applying the doctrine as delineated in *Inland Waters* to a policy governed by Tennessee law); *Northfield Ins. Co. v. Isles of June Consulting Ltd.*, No. 99-CV-1186, 2001 WL 34076047, at *7 (M.D. Tenn. Sept. 26, 2001) (same).

KCSI argues that in a case like this, the loss-in-progress doctrine only bars coverage when the insured knows of wrongdoing or actual legal liability, not merely of a claim or potential claim against it, prior to the coverage taking effect. However, this Court's formulation of the loss-in-progress doctrine is not so narrow.

In *Inland Waters*, the insured, a disposal company in Michigan, was employed to remove and dispose of several hundred drums containing waste paint material. 997 F.2d at 173. The insured began crushing the drums on the customer's property, "discovering in the process that some of the drums contained liquids which, when released, soaked into the soil." *Id.* Over six years later, hydrogeological investigations of the property revealed that solvent had significantly contaminated both the soil and groundwater. *Id.* The disposal company was sued, and its insurer sought a declaratory judgment that the policy provided no coverage for the pollution. *Id.* at 174. The district court granted summary judgment in favor of the insurer on the basis of the loss-in-progress doctrine, and the insured appealed. *Id.*

In its *Inland Waters* opinion, this Court first conducted a survey of the application of the loss-in-progress doctrine across several jurisdictions. *Id.* at 176-78. Some courts had held the doctrine applied where the insured merely knew of the *threat* of a loss when coverage began. *See, e.g.*, *Summers v. Harris*, 573 F.2d 869 (5th Cir. 1978) (applying the doctrine to bar coverage under flood insurance that the insured bought after traversing his front yard in a rowboat, because when the coverage took effect, the flood waters posed an immediate threat to his house). On the other hand, some cases required that the insured know of the loss with certainty. *See, e.g.*, *Montrose Chem. Corp. of Cal. v. Admiral Ins. Co.*, 35 Cal. App. 4th 335 (1992) (refusing to apply the doctrine where, before the commencement of coverage, the EPA had told the insured that it was potentially responsible for the costs of a cleanup at one of its manufacturing sites, because no lawsuit had been filed and the insured was not legally obligated to pay). This Court observed that, for the doctrine to apply, the other courts had invariably required "either (1) an awareness of a loss on the part of the insured or (2) an immediate threat of loss tantamount to foreknowledge in order for the doctrine to

defeat coverage." *Inland Waters*, 997 F.2d at 176. Ultimately, the Court announced its own formulation of the loss-in-progress doctrine, holding that:

> The lesson of these cases defining and applying the "loss in progress" doctrine is that the doctrine operates only where the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for.

*Id*. at 178.

Based on its holding, the Court reversed the district court's decision applying the loss-in-progress doctrine in favor of the insured, because it had failed to require, as an essential element, the insured's foreknowledge of the eventual loss for which the insured was seeking coverage. *Id*. The Court remanded the case for further proceedings: "Because the 'loss in progress' doctrine also requires foreknowledge of loss or an awareness of an immediate threat of loss on the part of the insured, the district court erred in granting summary judgment when the material issue of the scope of Inland Waters' foreknowledge of the eventual loss remained unresolved." *Id*. Specifically, the district court, on remand, was "directed to determine issues of fact; *viz*., whether Inland Waters knew or should have known at the time it obtained insurance coverage with National Union that the spill would result in damage to the groundwater or that the spill posed an immediate threat of damage to the groundwater." *Id.* at 179.

The set of facts this Court found could trigger the application of the doctrine in *Inland Waters*, i.e., the insured's knowledge that the spill would damage the groundwater at its former customer's site, or posed an immediate threat of damage to the groundwater, indicates that, under this Court's formulation, in a third-party insurance case such as the one before us, the loss-in-progress doctrine does not apply only where the insured knows that a lawsuit has been filed against it or that it has incurred actual legal liability. Rather, the doctrine may apply where the insured has subjective knowledge of the damages that could underlie a legal claim against it.

This conclusion accords with this Circuit's district courts' construction of *Inland Waters*. *See Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 10 F. Supp. 2d 771, 788 (E.D. Mich. 1998) (holding that in the third-party insurance context, *Inland Waters* "identifies the alleged property damage that the insured is later held responsible for as the relevant loss; not the insured's legal liability arising therefrom"); *Turner Funeral Home*, 2003 WL 23218046, at *16 (applying the doctrine to bar coverage where, at the policy's inception, the insured knew of claims against it for another entity's failure to cremate human remains); *Isles of June*, 2001 WL 34076047, at *7 (holding that the doctrine may apply where the insured "had knowledge of circumstances likely to result in or give rise to a 'claim' or could have reasonably foreseen a 'claim' might be made").

This case differs from *Inland Waters* in that here it is undisputed that the insured was well aware of the damages underlying the injured party's claim against it. Frizzell and Gatlinburg told KCSI in late 1996 that the split face block was leaking, in contravention of KCSI's promises that it would be waterproof, and that they considered KCSI liable to them for all damages to the hotel that the leaking block caused. KCSI knew legal liability was a possibility: it referred the matter to its corporate counsel. On January 1, 1997, when the AFIC policy took effect, KCSI was therefore "aware of a threat of loss so immediate that it might fairly be said that the loss was in progress." Under such circumstances, the loss-in-progress doctrine barred coverage under the AFIC policy.

Moreover, because *Inland Waters* itself presents a situation involving a third-party liability insurance policy, any claim by KCSI that the loss-in-progress doctrine does not apply to such policies is untenable. The district court did not err in granting summary judgment in favor of AFIC and in denying KCSI's motion for partial summary judgment.

*B. Waiver*

KCSI claims AFIC waived the right to deny coverage based on the loss-in-progress doctrine, because its June 5, 2000, letter denying coverage made no mention of it. An insurance company's reservation of rights is sufficient only if it "fairly informs the insured of the insurer's position." *Transamerica Ins. Group v. Beem*, 652 F.2d 663, 666 (6th Cir. 1981). However, under Tennessee law:

> [I]t is not required that the reason given for the insurer's position be legally correct. The position taken may be correct, but for other legal reasons. It is the insurer's conclusion regarding the existence or non-existence of certain coverage that must be clearly and fairly communicated to the insured, not its legal reasons therefor.

*Richards Mfg. Co. v. Great Am. Ins. Co.*, 773 S.W.2d 916, 919 (Tenn. Ct. App. 1988).

AFIC told KCSI in the June 5, 2000, letter that "[i]t is clear that whatever property damage occurred as a result of your product[] occurred prior to January 1, 1997, the first effective date of coverage by AFIC . . . ." AFIC thereby informed KCSI of its conclusion regarding the non-existence of coverage, and the factual reason therefor: the damage occurred prior to the policy period. As the district court correctly concluded, AFIC's failure to utilize the legal term of art "loss-in-progress doctrine" did not waive its right to invoke that doctrine in this litigation.

### III.  Conclusion

For the foregoing reasons, this Court affirms the district court's grant of summary judgment in favor of AFIC, and its denial of KCSI's motions for partial summary judgment and to alter or amend judgment.