**NEW HAMPSHIRE INSURANCE CO.,**
Plaintiff/Counter Defendant,

v.

**KNOXVILLE CAST STONE, INC.,**
Defendant/Counter Plaintiff,

and

**American & Foreign Insurance Company, Inc., Plaintiff/Counter Defendant,**

v.

**Sequatchie Concrete Services Inc., Knoxville Cast Stone, Inc., Gatlinburg L.L.C, and Frizzell Construction Company, Inc. Defendants/Counter Plaintiffs.**

Nos. 3:02–CV–623, 3:02–CV–632.

United States District Court,
E.D. Tennessee,
Knoxville Division.

Nov. 10, 2004.

H. Frederick Humbracht, Jr., Boult, Cummings, Conners & Berry, PLC, Nashville, TN, for New Hampshire Ins. Co.

William G. Colvin, Scott M. Shaw, Shumacker, Witt, Gaither & Whitaker, PC, Chattanooga, TN, for American & Foreign Ins. Co., Inc.

Jack M. Tallent, II, Rebecca Brake Murray, Kennerly, Montgomery & Finley, PC, Knoxville, TN, for Defendants/Counter Plaintiffs.

### MEMORANDUM OPINION

JORDAN, District Judge.

Four parties remain in these consolidated civil actions. Presently before the court are the summary judgment motions of three of those parties.

On March 31, 2004, plaintiff / counter defendant American & Foreign Insurance Company, Inc. ("AFIC") filed its motion for summary judgment [doc. 15], to which defendants / counter plaintiffs Sequatchie Concrete Services, Inc. and Knoxville Cast Stone, Inc. (collectively, "KCSI") have submitted a response [doc. 31].[1] KCSI has also filed motions for partial summary judgment as to AFIC [doc. 33] and as to plaintiff / counter defendant New Hampshire Insurance Co. ("New Hampshire") [doc. 38]. The time has passed on KCSI's summary judgment motions without response from either plaintiff.

For the reasons provided herein, AFIC's summary judgment motion will be granted, and AFIC shall be dismissed from this litigation. KCSI's summary judgment motion as to AFIC will be denied. KCSI's summary judgment motion against New Hampshire will be granted as to the claims addressed therein.

### I.

#### Factual Background

These cases arise out of a hotel construction project in Gatlinburg, Tennessee. KCSI provided split face concrete block to the contractor, Frizell Construction Company ("Frizell"), for use in a portion of the hotel's exterior. Both Frizell and the hotel's owner requested, through KCSI's sales representative, that an extra waterproofing additive be applied to the block. However, KCSI's purchase order form did not indicate the additive request and, accordingly, none was applied.

Frizell began installation in 1995 and soon noticed water penetration through the block. Frizell notified KCSI, which responded that the presence of water was not an unusual occurrence at the early stages of construction, due to building

---

1. Knoxville Cast Stone, Inc. and Sequatchie Concrete Services, Inc. are related entities. Both are defendants and counter plaintiffs in Case No. 3:02–CV–632, whereas Knoxville Cast Stone, Inc. is the sole defendant / counter plaintiff in Case No. 3:02–CV–623. For ease of reference, the court will employ the abbreviation "KCSI" both when referring to Knoxville Cast Stone, Inc. and when referring to the two defendants / counter plaintiffs collectively.

openings and the absence of a roof. KCSI maintained this posture throughout most of 1996.

On September 22, 1996, Frizzell sent a letter to KCSI, stating in material part:

There has been previous correspondence between Frizzell Construction, Uwe Rothe, the architect, and your company about rain water penetrating through the block to the interior of the building. Water penetration was a concern of the Owner, the Architect, and ourselves prior to ordering the block. Your representative told all of us that your block would be waterproof and require no additional sealer.

The roof is on, the gutters are in place, and the building is absorbing water through the block to the inside. The Owner's [sic] wanted me to make you aware that there is a potential claim against your company for the corrective work which will be required.

On November 21, 1996, Frizzell again wrote to KCSI:

Following up our previous correspondence and phone calls concerning water penetrating through the block to the interior of the building, the Owner and our company want you to be aware that considerable money has been spent and will be expended due to this problem. We estimate that just the application of waterproof coatings alone will cost over $50,000. In addition we have suffered water damage inside the building with resulting delays, and these costs have not been totaled.

Your company will be expected to pay all costs associated with water penetrating the split face block.

Through counsel, KCSI responded on December 30, 1996:

We call your attention to your company's purchase order No. 34950F dated August 22nd, 1995. It requires no specifications for waterproofing or water repellant. Accordingly, we do not believe that [KCSI] has any liability to your company or the owner for this project. We would appreciate it if you would advise us of any additional information that would lead us to a contrary legal conclusion.

Water continued to infiltrate the concrete block in 1997 and 1998, causing damage to the interior of the building. In 1998, the hotel owner and Frizzell each filed suit against KCSI in state court.

New Hampshire was KCSI's commercial general liability insurer in 1996. AFIC was KCSI's commercial general liability insurer in 1997. Each insurer defended KCSI in the state court litigation for a time, but then subsequently denied coverage. Each insurer asserted that the water damage did not occur during the period in which its insurance was in effect.

Subsequent to these denials, KCSI settled the state court claims (which sought $6,000,000.00 in damages) for $950,000.00. Each insurer then filed suit in this court, seeking declaratory judgments that no coverage existed under their respective policies. KCSI counterclaimed, seeking declaratory judgments of coverage, and alleging breach of contract, breach of the implied covenant of good faith, and violation of the Tennessee Consumer Protection Act.

## II.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to judgment as a matter of law." *Edwards v. Aguillard,* 482 U.S. 578, 594, 107 S.Ct. 2573, 2583, 96 L.Ed.2d 510 (1987) (quoting Fed.R.Civ.P. 56(c)). The movant may discharge its burden by demonstrating that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

However, a court cannot grant summary judgment based solely on a nonmovant's failure to respond. *See Carver v. Bunch,* 946 F.2d 451, 455 (6th Cir.1991). Instead, the motion must be carefully examined to ensure that the moving party has indeed discharged its burden of showing an absence of disputed material facts. *See id.*

## III.

*AFIC's Summary Judgment Motion*

■ AFIC argues that it has no liability to KCSI pursuant to the "loss in progress" doctrine. In addition, AFIC contends that multiple policy exclusions preclude coverage.

The parties agree that Tennessee law governs the construction of the policies presently at issue. The court's research (and the parties' briefing) indicates that no Tennessee state court has previously addressed the loss in progress doctrine. The Sixth Circuit, however, has recognized it as "a commonly accepted premise" and "fundamental principle" of insurance law, which precludes coverage "where the insured is aware of a threat of loss so immediate that it might fairly be said that the loss was in progress and that the insured knew it at the time the policy was issued or applied for." *Inland Waters Pollution Control, Inc. v. Nat'l Union Fire Ins. Co.,* 997 F.2d 172, 178–79 (6th Cir.1993) (citation and quotation omitted). "[T]he 'loss in progress' doctrine ... requires foreknowledge of loss or an awareness of an immediate threat of loss on the part of the insured[.]" *Id.* at 178.

According to AFIC's summary judgment brief:

The extent of [KCSI]'s awareness and concern about the claim is evident by [KCSI]'s decision to retain outside counsel to provide legal advice and assistance *before* the AFIC policy was issued in 1997. As early as 1995, [KCSI] was informed by the contractor that water penetrated the split faced block. Throughout 1996, [KCSI] was given repeated notice of the water penetration and the pending claims. However, it was not until January 1997 that AFIC issued an insurance policy to [KCSI]. During this lengthy period, starting from [KCSI]'s first awareness of the problems as communicated by the owners, contractor, and architect on the pro-

ject, and the substantial and escalating urgency of those communications, [KCSI] knew, with certainty, of "an immediate threat of loss tantamount to foreknowledge."

Thus, it is AFIC's position that the loss in progress doctrine is triggered by KCSI's 1996 knowledge of the: (1) water damage; and (2) threats of claims. In response, KCSI points to its December 30, 1996 letter denying liability and cites a strain of cases holding that it is the "certainty of *legal liability*, rather than certainty of *damage*, [that] is required to trigger application of the doctrine." *See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 518 (3d Cir.1997) (emphasis added).[2] This court, following a review of the Sixth Circuit's *Inland Waters* opinion and the handful of subsequent district court decisions within this circuit, cannot adopt the narrow construction urged by KCSI.

The Sixth Circuit applies the loss in progress doctrine where, at a minimum, the insured is aware of an immediate threat of loss. *See Inland Waters*, 997 F.2d at 178. Two federal courts of this state have, in unpublished opinions, interpreted *Inland Waters*. *See Trinity Universal Ins. Co. v. Turner Funeral Home, Inc.*, No. 1:02–CV–231, 1:02–CV–298; 1:02–CV–083, 2003 WL 23218046 (E.D.Tenn. Dec.12, 2003) (Edgar, J.); *Northfield Ins. Co. v. Isles of June Consulting, Ltd.*, No. 99–CV–1186, 2001 WL 34076047 (M.D.Tenn. Sept.26, 2001) (Nixon, J.). Neither case contains facts directly on point, but each is nonetheless instructive to a degree.

In *Isles of June*, the court viewed *Inland Waters* as requiring knowledge of wrongdoing or awareness "that his or her action constituted a 'loss' to another[.]"

*See Isles of June*, 2001 WL 34076047, at *6. The *Isles of June* court denied summary judgment, finding a genuine issue of material fact regarding the insured's subjective knowledge. *See id.* It is noteworthy that the insurance policy in *Isles of June* went into effect on January 15, 1999. On January 14, 1999, an attorney wrote to the insured threatening possible legal action. *Isles of June* does not indicate that the insured received the letter (or had any other warning of the subject claim) before the January 15 effective date of the policy. Importantly, the court noted that "it remain[ed] necessary to determine whether [the insured] *had knowledge of Royale's claims*, as well as when those claims arose[,] in order to determine Northfield's duty to defend." *See id.* at *5 (emphasis added).

In *Turner*, the court concluded that the loss in progress doctrine applied because the insured "knew that it was facing claim's" [sic] for occurrences (a third-party crematorium's failure to cremate bodies sent to it by the insured) prior to the policy's effective date. *See Turner*, 2003 WL 23218046, at *16.

> Turner was certainly aware of the loss, based upon both the media coverage [of the underlying events] and the service of at least one underlying complaint. Further, although Turner may not have been aware of the exact number of claims that would be filed against it, as of [the policy's effective date], Turner certainly had an awareness of an immediate threat of loss which was tantamount to foreknowledge.

*Id.* Certainly, *Turner* is distinguishable on the egregiousness of its facts and the pre-policy filing of a civil complaint. Nonetheless, *Turner* is instructive for its focus on

**2.** "State courts are divided as to the scope of the known loss doctrine. Some have construed it quite narrowly, barring coverage only when the insured knew of certainty of damages and liability." *Pittston*, 124 F.3d at 516.

the insured's awareness of claims (i.e., "threats of loss") to be defended against, rather than its focus on the certainty of Turner's eventual legal liability. *See id.*

■ *Aetna Casualty & Surety Co. v. Dow Chemical Co.*, 10 F.Supp.2d 771 (E.D.Mich.1998) is also enlightening in its interpretation of *Inland Waters.* The *Aetna* court, applying *Inland Waters* and Michigan law, concluded that "the crucial issue here is whether [the insured] was aware, at a minimum, of an immediate threat of the contamination for which it was ultimately held responsible and for which it now seeks coverage; *not [its] awareness of its legal liability* for that contamination." *Aetna,* 10 F.Supp.2d at 790 (emphasis added). This court agrees with *Aetna*'s conclusion. *Inland Waters* requires awareness of a *threat* of loss—not awareness of the certainty of liability.

■ By late November 1996, KCSI had subjective awareness of "a threat of loss so immediate that it might fairly be said that the loss was in progress[.]" *See Inland Waters,* 997 F.2d at 178. Frizell's November 21, 1996 letter put KCSI on notice that the hotel had "suffered water damage inside the building with resulting delays, and these costs have not been totaled. Your company will be expected to pay all costs associated with water penetrating the split face block." Irrespective of whether KCSI genuinely questioned its eventual legal liability at that time, the insured was aware of "an immediate threat of loss tantamount to foreknowledge." The loss in progress doctrine accordingly precludes coverage under the AFIC policy, which did not go into effect until 1997. The loss in progress doctrine's "basic premise is that insurance policies are intended to protect insureds against risks of loss; not losses that have already taken place or are substantially certain to occur. Accordingly, the doctrine is properly invoked when the insured 'knows' about the claimed loss before the policy is purchased." *Aetna,* 10 F.Supp.2d at 789. Summary (and declaratory) judgment must be granted in AFIC's favor.[3]

The court accordingly declares that pursuant to the loss in progress doctrine, AFIC's policy affords no coverage for the loss in question. KCSI's motion for partial summary judgment as to AFIC will be denied. Because the court concludes that the loss in progress doctrine warrants summary judgment in AFIC's favor, the remainder of AFIC's bases for summary judgment (relating to multiple policy exclusions) need not be considered. However, the court has reviewed those issues and would find that they are without merit.

## IV.

### *KCSI's Summary Judgment Motion as to New Hampshire*

Contending that "no significant property damage [or 'relatively minor property

---

**3.** Two contrary arguments by KCSI require only brief consideration from the court. First, KCSI argues that AFIC waived its loss in progress defense by not raising the issue prior to KCSI's settlement of the state court litigation. To the contrary, on June 5, 2000, an AFIC Senior Claim Specialist wrote to KCSI declining coverage. That letter chronicled the pre–1997 water damage (and KCSI's knowledge thereof) and concluded that "[i]t is clear that whatever property damage occurred as a result of your products [ ] occurred prior to January 1, 1997, the first effective date of coverage by AFIC[.]" Thus, the issue was clearly and timely raised by AFIC, and the court will not find waiver solely on AFIC's employee's failure to utilize the legal term of art "loss in progress doctrine." Secondly, KCSI contends that the documents supporting AFIC's summary judgment motion are not verified as required by Fed.R.Civ.P. 56. KCSI's argument is correct in part. However, the documents considered by the court in resolving AFIC's summary judgment motion were either properly certified as deposition exhibits or were properly brought before the court as verified attachments to KCSI's own summary judgment motions.

damage'] occurred during the policy period," New Hampshire's complaint asks for a declaratory judgment that:

1. The bulk of the claim relating to property damage occurred outside the policy period of [New Hampshire's] policy and there is no coverage for that part of the damages asserted in the Underlying [state court] Suits;

2. The settlement of the Underlying Suits was unreasonable and arbitrary in that it did not adequately or accurately reflect the extent of the property damage sustained by the owner in the Underlying Suits and is therefore unenforceable against [New Hampshire][.]

Responding through its unopposed motion for partial summary judgment against New Hampshire, KCSI now seeks the following relief:

KCSI submits that it is entitled to partial summary judgment in that there is no genuine issue as to any material fact regarding whether coverage was triggered under New Hampshire's Policy and therefore KCSI is entitled to summary judgment as a matter of law on the issue of coverage. Further, there is no genuine issue as to any material fact regarding the reasonableness of the settlement by KCSI of the underlying lawsuits and therefore KCSI is entitled to judgment as a matter of law regarding the fact that the settlement was reasonable.

■ KCSI has met its burden of demonstrating an absence of disputed material fact as to whether coverage was triggered under the New Hampshire policy. The policy, at § 1, provides in material part that New Hampshire "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. . . . if [t]he . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' and [t]he . . . 'property damage' occurs during the policy period." New Hampshire's complaint does not cite any policy exclusion that would bar coverage for the property damage that the hotel incurred, nor does New Hampshire cite any provision excluding "relatively minor" damage.

KCSI has submitted the affidavit of the hotel's construction project manager, Freeman Williams. Mr. Williams avers that, in 1996, water, mold, and mildew damaged walls, carpet, vinyl, and wallcoverings after the completion of the hotel. In addition, the earlier-cited November 21, 1996 letter from Frizzell to KCSI states that water had penetrated "through the block to the interior of the building . . . considerable money has been spent and will be expended due to this problem. . . . [and] we have suffered water damage inside the building with resulting delays, and these costs have not been totaled." The court accordingly concludes that there is no material issue of fact as to whether "property damage" resulted from a 1996 "occurrence," thus triggering coverage under New Hampshire's 1996 policy.

■ The court further concludes that there is no material dispute as to the reasonableness of KCSI's $950,000.00 settlement of the state court lawsuits. KCSI has submitted a report prepared by New Hampshire's counsel during the period of New Hampshire's defense of those suits. The report stated that "[w]e would consider a reasonable settlement to be up to $860,000.00." However, the report went on to opine that if the state court plaintiffs were allowed to amend their complaint to seek higher damages of $6,000,000.00, then "the potential judgment could increase dramatically." The state court in fact subsequently permitted the plaintiffs to increase their damage claims to $6,000,000.00. New Hampshire's counsel

then wrote, on August 26, 2002, that it had advised both KCSI and New Hampshire that "the potential for a verdict of up to $6,000,000.00 is quite possible."

A September 9, 2002 New Hampshire memorandum predicted a verdict range between $2,000,000.00 and $6,000,000.00 and recommended "[a]ttempt[ing] to negotiate a settlement in order to avoid a verdict which could come in as high as [$]6,000,000.00." That same day, New Hampshire's Claim Specialist Tom Judge wrote by email that "The drop dead demand is now 1.5 mill. Defense counsel . . . is pushing for an agreement of some sort . . . as he is very concerned that this opportunity will slip by and we will get hit for something much higher than the 1.5 mill. demand." In light of this undisputed evidence, there is no question in the court's mind that KCSI's settlement of the state court litigation was reasonable, and KCSI is entitled to summary judgment on that issue.

Lastly, KCSI asks the court to decide the amount of coverage due under the New Hampshire policy. However, the court does not presently have before it sufficient information to make that determination. Instead, the issue of damages, along with KCSI's Tennessee Consumer Protection Act claim, will be decided by the jury at the April 25, 2005 trial already scheduled in this civil action. An order consistent with this opinion will be entered.

### ORDER

For the reasons stated in the memorandum opinion filed contemporaneously with this order, American & Foreign Insurance Company, Inc.'s ("AFIC") motion for summary judgment [doc. 15] is **GRANTED**, and the "Motion for Partial Summary Judgment of Sequatchie Concrete Services, Inc. and Knoxville Cast Stone, Inc[.]

as to American & Foreign Insurance Company, Inc." [doc. 33] is **DENIED**. The court **DECLARES** that, under the loss in progress doctrine, the property damage underlying these civil actions was not insured by the subject insurance policy issued by AFIC. AFIC is **DISMISSED** from these consolidated civil actions.

It is further **ORDERED** that the "Motion for Partial Summary Judgment of Knoxville Cast Stone, Inc[.] as to New Hampshire Insurance Company, Inc." [doc. 38] is **GRANTED** on the issues of coverage and reasonableness of settlement. Case No. 3:02–CV–623 remains on the court's docket for an April 25, 2005 jury trial on counter plaintiff's claims for damages and violation of the Tennessee Consumer Protection Act.

**IT IS SO ORDERED.**